STATE v. ROBERT JONES.

*Judge's Charge.*

1. A charge to the jury, in which the judge deals in generalities and abstract propositions of law, (merely reading "head-notes" of re-

ported cases) without making any application of them to the facts of the case, does not meet the requirements of the statute, and furnishes sufficient grounds for a new trial.

2. He should not recapitulate the evidence in detail, but eliminate the material facts, array the state of facts on both sides, and apply the principles of law to each, that the jury may decide the case according to the credibility of the witnesses and the weight of the evidence.

(*State v. Summey*, 2 Winst., 108 ; *State v. Dunlop*, 65 N. C., 288 ; *Gaither* v. *Ferebee*, 1 Winst., 310 ; *State* v. *Norton, Ib.* 303, cited and approved.)

INDICTMENT for murder, removed from Union county, and tried at Spring Term, 1882, of MECKLENBURG Superior Court, before *Gudger, J.*

The material portion of the evidence offered on the part of the state is as follows : On the 23rd of September, 1880, the deceased (Spencer Phillips) and some other persons came to the town of Monroe in Union county, late in the evening and drove into Stewart's lot. Soon after their arrival, the prisoner and his father (Charles Jones) drove their wagon into the same lot, where there was a fire. The prisoner left, and after an absence of an hour or two, returned about eleven o'clock and asked the deceased for supper, and the deceased said if he had any corn bread with bran in it, he would give him some. Thereupon a quarrel ensued ; the prisoner having a pistol in his hand was carried out of the lot by his father, but returned and the quarrel was renewed, and he was again carried out by his father, and they went to the camp of one Johnson, not far off, where the prisoner got his supper.

While there, as testified to by witnesses, the prisoner made a threat against the life of the deceased. This however was contradicted by one of the witnesses for the defence.

On the return of the prisoner to the camp fire in the lot, after being carried off a second time by his father, he threw

some fodder out of his wagon, and also a quilt which he placed on the fodder, and quietly sat down upon it. The deceased asked him what he had come back for—was he going to make acknowledgments—to which the prisoner made no reply. Deceased then told prisoner he intended to "law" him the next morning for carrying a pistol—prisoner said he did not have one—deceased said he did, and the prisoner gave him the lie. The prisoner's father took him by the arm and was carrying him away, when he was followed by the deceased with his coat off as if he wanted to engage in a fight, and when he came within a few steps of prisoner, a pistol was fired twice in rapid succession, and the deceased exclaimed he was shot and killed, and after walking a short distance fell and expired. A piece of a fence rail was found near him when he fell.

When the shooting took place, the parties were fifty or sixty yards from the street, and nearer the street than the fire. The prisoner made his escape, but was arrested the next morning about eight miles from Monroe. A pistol was found on his person, with only one chamber empty, and no cartridges were found about him.

The evidence offered by the prisoner consisted of his own testimony, that of his father, and such facts in his favor as were testified to by the state's witnesses in their direct examination, or were elicited on cross-examination.

The father of the prisoner, after stating the conversation between prisoner and deceased about the "rations," which led to the quarrel, testified, that the deceased rose up, and he put his hand on him and said, "don't get mad;" deceased drew his knife, kept it in his hand, and said "I'll fight him a fair fight," and jumped across the fire; witness took the prisoner by the arm, and said "follow me," and carried him off; prisoner left his hat, and staid away for some time at another camp where he got supper, and getting sleepy he went back to the wagon-yard, and threw some fodder and

a quilt out of his wagon. The deceased said, " what in the hell have you come back for ?" and told prisoner " he must make it up or he would law him about the pistol," and the deceased then advanced upon the prisoner with his knife in his hand ; prisoner retreated, followed by the deceased who struck him two blows with a piece of rail which bioke at the second stroke, when he picked up a pine pole and knocked the prisoner down ; then some one shot from behind, and the prisoner also shot ; only about three seconds intervening between the two shots.

The prisoner's testimony was substantially the same as that of the preceding witness.

Another witness for the defence testified that he saw the deceased, while quickly following the prisoner, make a motion as if he was shutting a knife, and that he got an axe and said before the prisoner " shall stay here, I'll hew him down with this axe ;" he also had a knife which one of the state's witnesses testified he waved and said if the prisoner came back he would cut him, and also asked one of his party to give him a pistol ; that while he was following prisoner, he stooped down, but whether he picked up anything, the witness did not know. Some of the state's witnesses said the deceased did not stoop down, and they saw nothing in his hand. The threats made with the axe and knife were not in the presence of the prisoner.

Several exceptions to the ruling of the court upon points of evidence were taken by the prisoner's counsel, but it is not necessary to an understanding of the opinion that they should be stated.

His Honor, after telling the jury that murder is a killing of malice ; manslaughter, a killing of provocation ; and excusable homicide, a killing from necessity, charged substantially as follows :

1. When it is proved or admitted that one killed another intentionally with a deadly weapon, the burden of showing

justification, &c., is on the accused, who must show the same, not beyond a reasonable doubt nor by a preponderance of evidence, but to the satisfaction of the jury, unless it appear in the evidence against him. Upon such killing being proved or admitted, nothing more appearing, the law presumes it to have been done in malice, and to be murder. *State* v. *Willis,* 63 N. C., 26.

2. If jury find that prisoner killed deceased, to make it excusable on the ground of self-defence, the prisoner should not only have reasonable grounds to apprehend, but should also actually apprehend that his life was in imminent danger or the deceased was about to do him some enormous bodily harm ; there must be a necessity for taking life, from the fierceness of the assault, either real or reasonably apparent to the prisoner; and the jury, not the prisoner, are the judges of the reasonable apprehension.

3. If prisoner did not begin the fight but was assaulted by deceased and a combat ensued, he cannot excuse himself, as for a killing in self-defence, unless he quitted the combat before the fatal shot was fired, if the fierceness of his adversary permitted, and he retreated as far as he could with safety, and then killed the deceased to save his own life.

4. If jury find that prisoner voluntarily went to the place, the camp of deceased, armed with a pistol, for the purpose of provoking a difficulty, it would make no difference who commenced the affray ; the plea of self-defence would not avail, unless after the fight commenced the prisoner in good faith abandoned it.

5. If they find that the deceased commenced the fight, and struck prisoner with a rail or pole, and prisoner, smarting under the provocation, the *furor brevis,* took the life of deceased, without necessity to save his own, or to protect himself from great bodily harm, the prisoner would be guilty of manslaughter.

To all of which, the prisoner excepted, and requested the court to charge as follows:

1. Even if prisoner showed a willingness to fight, yet, a fight being imminent, if he began to withdraw as far as the fierceness of his adversary permitted, so that to continue the retreat would have endangered his life or subjected him to great bodily harm, and under these circumstances slew the deceased, it is excusable homicide. Declined, and the following substituted: Although one may enter into a fight willingly, yet if in its progress he be sorely pressed, that is, put to the wall, so that he must be either killed or suffer great bodily harm unless he kill his adversary, and if under such circumstances he does kill, it is excusable homicide. *State* v. *Ingold,* 4 Jones, 216.

2. If while retreating he was attacked with the rail in such a manner as furnished reasonable grounds for apprehending a design to take his life, or do him great bodily harm, the prisoner had the right to act upon appearances and kill his assailant; and if under these circumstances he killed the deceased, it is excusable homicide, although the appearances were false. To this the court added: But of the reasonableness of his grounds of belief, the jury are the judges, not the prisoner.

3. If prisoner, followed by deceased with a rail or other deadly weapon, retreated to a point beyond which he reasonably believed he could not go without incurring imminent danger to life or limb, or serious bodily harm, and under these circumstances slew the deceased, he is not guilty; and it is the duty of the jury in ascertaining the reasonableness of his belief to consider the formation of the ground—the ditches, fences and avenues of escape, and the prisoner's knowledge of them all. Given by the court.

4. If deceased knew that prisoner had in his possession a pistol, and prisoner was aware of this knowledge, and knowing this fact the deceased assaulted the prisoner, this is a

circumstance to be considered by the jury favorably to the prisoner's theory of self-defence, as going to show the reasonableness of his belief that deceased intended to kill him, or inflict great bodily harm, and that the danger thereof was imminent. Refused.

5. Neither gestures nor words, however grevious, are a sufficient provocation to justify an assault, much less an assault with a deadly weapon ; therefore any language used by prisoner should not be regarded by the jury as justifying the deceased in assaulting the prisoner with a deadly weapon, and does not lessen the right of prisoner to strike in self-defence to prevent death or great bodily harm. The first part given, the balance refused.

6. If the lot where prisoner was camping was a public yard, and he had gone there for the purpose of camping, he had the right to be there ; and if deceased assaulted him in the lot with a rail, which is a deadly weapon, with the intent to drive him therefrom, or failing in that to kill him or inflict serious injury, or if prisoner reasonably believed such to be the case, he was not obliged to retreat, but had the right to stand his ground and oppose force by force, and to slay his assailant if necessary to save his own life. Given.

7. A blow is a sufficient provocation to reduce a homicide to manslaughter ; therefore if prisoner went to the camp where the homicide was committed, for the purpose of spending the night there, and the difficulty arose under the circumstances narrated by the witnesses, in which the prisoner received a blow, and thereupon he killed the deceased, the killing cannot be attributed to malice, but at most was the result of passion suddenly aroused, and is manslaughter ; and this is so, whether a weapon was used or not, and even if the blow was not dangerous. Refused in the language used, and the following substituted : A blow is a legal provocation sufficient to reduce a homicide to manslaughter ; therefore if prisoner went to the lot where the killing took

place, for the purpose of spending the night there, and the difficulty suddenly sprung up, in which the prisoner received a blow and thereupon killed deceased, the killing is to be attributed to the passion suddenly aroused, and is nothing greater than manslaughter; and this is so, whether a weapon was used or not, and even if the blow was not dangerous.

8. If deceased was rushing upon prisoner with a rail in such a manner as reasonably to induce the prisoner to believe that an immediate blow would be dealt him, and prisoner might have retreated further, and did not, but drew his pistol and shot the deceased, it is but manslaughter; but if he could not have retreated further, or reasonably believed he could not, then it is excusable homicide. Refused, the court holding that prisoner had the benefit of all he was entitled to under the evidence, in the instructions already given.

9. Even if the prisoner, prior to the fatal encounter, entertained malice towards the deceased, if there was provocation sufficient to arouse the prisoner's passion, as by an assault with a fence rail, then the jury must find that the killing was done upon the provocation and not through malice, unless it clearly appears that the prisoner would have carried into effect a determined purpose to kill anyhow, notwithstanding the provocation, or that the prisoner sought the deceased for the purpose of provoking him to make the assault that he might use it as a cover to the wicked intent previously formed and acted on. Refused, and in lieu thereof the court charged as follows: A mere grudge, or malice in its general sense, is not sufficient to bring a case within the principle that refers the motive to antecedent malice, rather than an immediate provocation; to have that effect there must be a particular and definite intent to kill, as if the weapon with which the party intends to kill is shown, or the time and place are fixed on,

and the party goes to the place at the time for the purpose of meeting his adversary and with an intention to kill him ; but where A bears malice against B and they meet by accident, and upon a quarrel B assaults A and thereupon A kills B, the rule of referring the motive to the previous malice will not apply. . *State* v. *Jacob Johnson*, 2 Jones, 247.

The prisoner excepted, and after a verdict of guilty appealed from the judgment pronounced.

*Attorney General*, for the State.

*Messrs. Covington & Adams* and *A. W. Haywood*, for the prisoner.

ASHE, J. In the view we take of this case, we deem it needless to inquire whether there is any error in the principles of law laid down by His Honor in his numerous instructions to the jury. The question is: has he given those instructions in the manner the law has made it his duty to do. The law prescribes and defines this duty. It declares that a judge in delivering his charge to the jury shall state in a plain and correct manner the evidence given in the case, and declare and explain the law arising thereon. Rev. Code, ch. 31, § 130; C. C. P., § 237.

Our jurors are plain, practical men, who, to their credit be it said, most uniformly have intelligence and judgment sufficient to deal with the facts of a case, but they are not versed in the law, and must look to the presiding judge for the principles of law governing the case, and for his aid in making their application to the facts. · The judge, who in his charge to the jury simply lays down certain abstract propositions of law, however correct and applicable to the facts of a case, does not comply with the requirements of the statute. "He is not required to recapitulate the evidence in detail, but he is required to put the case to the jury in such a way, as to make it appear by the record what facts

the jury find and what is his opinion as to the law, so that his opinion may be reviewed by this court." *State* v. *Summey,* 2 Winst., 108; *Gaither* v. *Ferebee,* 1 Winst., 310; *State* v. *Norton, Ib.,* 303.

So in *State* v. *Dunlop,* 65 N. C., 288, it is held, where instructions are asked for upon an assumed state of facts which there is evidence tending to prove, and thus questions of law are raised which are pertinent to the·case, it is the duty of the judge to answer the questions so presented, and to instruct the jury distinctly what the law is if they shall find the assumed state of facts; and so in respect to any state of facts which may be reasonably assumed upon the evidence. "Upon a demurrer to a pleading, or a special verdict, or case agreed, or when, in whatever way, certain facts are ascertained, it becomes the duty of the judge to apply the law to the facts and pronounce a judgment. In close analogy to those cases, is the case where, upon issue joined and a trial by jury, there is evidence proving one or another state of facts according to the credibility and weight of the evidence. In such a case, the judge cannot apply the law to any ascertained state of facts, for the facts are to be ascertained by the jury; but he must do what the circumstances of the case admit of. To that end, he must tell the jury, if they find the facts thus, the law is thus," &c. And in the same case it is held that it is the duty of the judge in charging the jury to eliminate the material facts of the case, array the state of facts on both sides, and apply the principles of law to each, so that the jury may decide the case according the "credibility of the witnesses and the weight of the evidence."

In the case before us, the record states that the judge, after telling the jury that murder was a killing of malice; manslaughter, a killing of passion; and excusable homicide, a killing from necessity, proceeded to give his charge.

STATE *v.* JONES.

We cannot conceive what definite idea of the different grades of homicide the jury could gather from these definitions, and there is nothing in the record to show they were given with more particularity. A man may bear malice towards another, and yet kill him upon provocation, or even from necessity, without being guilty of murder; so he may without express malice kill upon provocation, and yet be guilty of murder.

In His Honor's main charge to the jury, there is no pretence of an array of the facts, and therefore, no application of the propositions of law laid down, to the different state of facts. In the first instruction given, there is no specific reference to any fact whatever; and in the last two, there is but a bare allusion to some isolated facts which could not have given much aid to the jury. But from first to last, the charge deals in generalities, expressed in technical language, hardly possible to be understood by the jury, or understandingly applied by them to the facts. And then, as was suggested to us by the prisoner's counsel and complained of by him, when requested to give certain specific instructions bearing upon the facts in the case, as for instance, in the first and ninth instruction asked, His Honor responds by merely reciting from the reports the "headnotes" of two cases, *Ingold's* and *Johnson's*, without making any sort of application of their principles to the facts of the case in hand, so as to enable the jury to apprehend and appreciate their consequences and effect.

The prisoner's counsel insists that this is not a compliance with the requirements of the statute, and we concur with him in that view. We therefore award the prisoner a new trial.

Error. *Venire de novo.*