FRANK HORAH and wife v. SAMUEL KNOX and others.

*Wills—Fraud—Remarks of Counsel.*

1. Upon trial of an issue *devisavit vel non*, opinions of witnesses, as held in *Bost* v. *Bost*, *ante* 477, are competent evidence in ascertaining the degree of mental capacity of the testator.

2. Where the will was made under alleged fraudulent influences practiced by those in confidential relations to the testator, *it was held* that the inference of fraud, unless rebutted, should be drawn by the jury from the evidence, and is not a conclusion of the law.

3. Counsel have the right "to argue to the jury the whole case, as well of law as of fact," and to that end may read and comment on reported cases, but the facts contained in them cannot be read to the jury as evidence of their existence in another case. An exception to remarks of counsel will not be entertained after verdict.

(State v. *Miller*, 75 N. C., 73 ; *Mason* v, *Pelletier*, 82 N. C., 40 ; *Melvin* v. *Easley*, 1 Jones, 386 ; *Huffman* v. *Click*, 77 N. C., 55 ; *Morgan* v. *Smith* Ib., 37 ; *Harrison* v. *Chappell*, 84 N. C., 258 ; *Knight* v. *Houghtalling*, 85 N. C., 17 ; *Wright* v. *Howe*, 7 Jones, 412 ; *Downey* v. *Murphey*, 1 Dev. & Bat., 82 ; *State* v. *Williams*, 2 Jones, 257 ; *State* v. *Smith*, 8 Jones, 132, cited and approved.)

ISSUE of *devisavit vel non* tried at January Special Term, 1882, of MECKLENBURG Superior Court, before *Bennett, J.*

Judgment for plaintiffs, appeal by defendants.

*Messrs. Bynum & Grier*, for plaintiffs.

*Messrs. Jones & Johnston* and *Wilson & Son*, for defendants.

SMITH, C. J. The exceptions contained in the appeal are taken to the rulings of the court on the trial of the issue, raised by the caveat to the script propounded as the will of Ann Sterling, and submitted to the jury. " Is the said paper writing, or any part thereof, and if so, what part, the last will and testament of Ann Sterling, or not ?"

The script is in few words, was executed in March, 1877, in the presence of two attesting witnesses, and gives all the estate of the deceased, real and personal, to the propounder, Margaret Horah, as due for her kindness and attention during the long affliction of the deceased.

The formal execution of the instrument, proved by the subscribing witnesses, was not controverted, but its legal efficacy was impeached upon the ground of a want of mental capacity, and the exercise of undue influence by the sole beneficiary under it.

There was much evidence offered on the question of the sanity of the deceased before and up to and at the time when the script was made, and of the relations between the legatee and the deceased, the latter being under the care and in the custody of the other for a considerable period preceding the death. The testimony is needlessly set out at full length, and this brief reference to its general character and import is sufficient for an intelligent apprehension of the point of law to be considered.

First Exception. The caveators, appellants, introduced William Sloan as a witness, who stated that he was a physician and practiced his profession for many years before the late war, but had ceased to do so ; that he knew the deceased, saw her frequently when an inmate in the Asylum at Raleigh, and since on the streets of Charlotte, and thus had many opportunities of knowing her mental condition.

The caveators then proposed to offer the following interrogatory, which on objection was ruled out, and this is their first exception :

In your opinion, based upon your knowledge and observation of the condition of her mind, was Ann Sterling, when you last saw her before the date of the alleged will, competent or of sufficient capacity to transact business or make a will?

But in lieu thereof the following question was allowed to be put and answered by the witness, the propounder's objection thereto being overruled.

Was Ann Sterling in your opinion, based upon your knowledge and observation of her mind, competent, or had she sufficient capacity when you saw her, to transact business involving a disposition of her property? The witness responded "no."

The ruling of the court in rejecting the first form of inquiry, seems to rest upon the misconception that it embodies a rule for measuring and testing the legal capacity of the deceased to make a valid disposition of her estate by will; while, as we have said in passing upon a similar exception in *Bost* v. *Bost, ante,* 477, this is but a method of ascertaining the degree and extent of the mental capabilities of the person, and the vigor and strength of his will. The information elicited by such inquiry may be, and is, important in enabling the jury, when instructed as to what is necessary in constituting a disposing mind and memory, and freedom in disposing of property, to bring the facts as they shall be found to the test of the prescribed rule, and render an intelligent verdict upon the issue.

The concluding clause in the rejected interrogatory may be obnoxious to the objection, that the witness is asked to determine for himself what in law constitutes testamentary capacity, before any rule has been laid down by the judge for his guidance in framing an answer. But aside from this, and deeming the question pertinent and proper in gauging the intellectual faculties of the deceased, preparatory to the application of the law to the facts, we think the error, if it

be such, is cured, and every proper object attained by the substituted and answered inquiry.

The witness was permitted to testify from his own knowledge and observation, and express the opinion that the deceased did not possess sufficient capacity to make any effectual disposition of her property, including as well a disposition by will as by gift *inter vivos*, thus affording the jury the results of the witness' observation, and his own general estimate of the mental infirmities of the deceased, without invading the province of the jury in determining the issue itself. If her intellectual faculties were so enfeebled and impaired as to disable her to make any valid disposition of her estate, she could not of course dispose of it by will, and so the caveators have all the benefit of a direct negative answer from the witness to the question as first proposed. The exception cannot therefore be sustained.

Second Exception: In the opening argument the propounders read and commented on the case of *Lee's Heirs* v. *Lee's Executors*, as reported in 13 Am. Decisions, 722, as showing, in the maker of the impeached will, hallucination and delusion, in a much greater degree than had been proved in the present trial, and yet the will had been sustained. The caveators objected to the use of the reported case, and requested the court to interpose and arrest this cause of remark on the part of the propounders' counsel. The court declined to interfere.

We are unable to see upon grounds the course pursued in the argument of counsel, in the particular made the subject of exception, can be deemed an abuse of the right expressly given by statute "to argue to the jury the whole case as well of law as of fact," (Rev. Code ch. 31, § 57, par. 15), and more especially under the enlarged privilege conferred by a more recent statute, (Acts 1874–'75, ch. 114) as interpreted in *State* v. *Miller*, 75 N. C., 73.

It is true that the statement of facts contained in an ad-

judicated case cannot be read to the jury as evidence of their existence in another cause, as pertinent to a pending inquiry, as is declared in *Mason* v. *Pelletier*, 82 N. C., 40 ; nor can the writings and opinions of medical experts contained in a written treatise be used as evidence before a jury. *Melvin* v. *Easley*, 1 Jones, 386; *Huffman* v. *Click*, 77 N. C., 55.

But the reading of the reported case was not for such purposes, but to illustrate a principle of law based upon the supposed, though they may have been, actual facts, decided by a court of high authority. Without the facts, the principle expressed in an abstract form would be of little value in instructing the judicial mind. All treatises upon the law illustrate a legal proposition and challenge its acceptance as correct, by reciting the facts and material circumstances under which it has been held, and the practice of reading from them, as from the report of adjudged cases, is universal and unquestioned in an argument upon a point of law arising in the course of the trial.

The privilege of counsel may be abused, but unless grossly abused, the corrective must be left in the hands of the judge who presides and conducts the trial, in the exercise of his sound discretion.

Third, Fourth and Fifth Exceptions: These three exceptions relate to the comments of propounders counsel upon other matters, to wit : the unreliableness of expert testimony, the neglect of the deceased by her contesting relatives and their earnest effort to defeat her will, and certain numerous illustrations drawn from life—in reference to all of which it is only necessary to say, that no objection to these remarks was made until after the rendition of the verdict. *Morgan* v. *Smith*, 77 N. C., 37 ; *Harrison* v. *Chappell*, 84 N. C., 258; *Knight* v. *Houghtalling*, 85 N. C., 17. In the latter case it is said :

"A party cannot be allowed thus to speculate upon his

chances for a verdict, and then complain because counsel were not arrested in their comments upon the case."

Sixth Exception. The caveators except to the refusal of the court to give certain tendered instructions submitted to the court in writing, but not read in the hearing of, nor known to the propounders' counsel until after verdict, which divested of unnecessary verbiage and avoiding repetition, were in substance as follows:

1. If when the script was executed the deceased had not sufficient mental capacity to understand the nature of the transaction, or the effect of her act, the verdict should be for caveators.

2. If the deceased lived with the propounders, Horah and wife, the latter being sole devisee and legatee, in their care and custody, the relation thus formed raises a presumption of fraud and undue influence practiced in procuring the execution of the script by them, sufficient to annul the act, unless rebutted, and the jury should so find.

3. Sanity is presumed until the contrary is shown, and insanity being proved at any previous period to exist, is presumed to continue to the doing the alleged testamentary act, unless restored reason be shown, and if the jury are satisfied of the insane mental condition of the deceased at any antecedent time, the propounders are required to show that the instrument was made during a lucid interval.

4. If the will was prepared at the instance of the legatee, and not submitted to the deceased until the morning of and just before its execution, this is a strong badge of fraud and should be so considered by the jury.

5. If the deceased was old, of weak mind and feeble body and at times deranged, and if the will was drawn by a lawyer of the legatee and under her direction, was not read over to deceased until the time when it was executed, and the subscribing witnesses were sent for by the legatee, and the alleged testatrix was under the control of the propund-

ers, the law raises a presumption of fraud, and unless disproved, the jury should find against the script.

The charge given to the jury so far as material to an understanding of the exception was substantially this:

If the alleged testatrix had, and the jury so believe upon the evidence, testamentary capacity, that is, capacity to make a will, when the script was executed by her, then the issue must be found in favor of the propounders; if on the contrary, she then had not the requisite capacity, the verdict must be for the caveators. Sanity is the natural and usual condition of the human mind, and every person is presumed to be sane. The presumption may be rebutted. If the deceased was insane at any time before the alleged testamentary act, she is presumed to continue insane down to and including the act. The presumption of a continuance of an ascertained pre-existing insanity, may itself be rebutted by proof of an actual sane condition of mind, when the script was executed. The sufficiency of the evidence to remove the presumption must be judged by the jury, who alone can determine its force and credit. In order to an effectual disposal of property by will, the person making it must know what he or she is doing at the time; must understand the nature of the act in which he or she is engaged, and its full extent and effect. If the deceased had such capacity, it was a valid execution of the instrument; if she did not have it, then it was not her will; and that it was not necessary to a valid dispositive testamentary act, that the party should be able to dispose of the property with judgment and discretion.

The caveators' exception extends to the refusal to give their tendered instructions and to those that were given to the jury.

The refused instructions, of which the appellants complain, may be condensed and expressed in the single proposition, that from the confidential relations subsisting between

the testatrix and legatee, and the authority over the person of the former committed to the latter and her husband, accompanied with the facts in evidence touching the prepa-ration and execution of the will, the law raises the inference, to prevail unless disproved, that the will was the offspring of a fraudulent influence exercised by them over the tes-tatrix, which vitiates and avoids the instrument; and this is a rule of law to be declared by the court for the guidance of the jury.

We think His Honor properly refused to lay down such a rule of law, and that he would have committed error in doing so. The inquiry before the jury was as to the testa-mentary capacity of the testatrix and the legal freedom of her act. Formal execution and a knowledge of the con-tents of the writing being shown, the caveators impeaching its validity must affirmatively show the want of capacity, or the exercise of a fraudulent influence, which is defined in *Wright* v. *Howe*, 7 Jones, 412, to be "an influence by fraud or force, or by both, and in its application to the making of a will, signifies, that through one or both of these means the will of the decedent was perverted from its free action or thrust aside entirely, and the will of the influencing party substituted for it." This infectious influence must be shown by those who allege that it has been successfully exerted in procuring the making of the will, and while it may be inferred from circumstances attending the transac-tion, the inference must be drawn by the jury from the evidence before them.

The rule governing in our system of a jury trial of issues of fact, and the reason, why the decisions of the probate judge in passing himself upon both the law and fact in testa-mentary proceedings before him have not the weight and authority of a precedent, are so forcibly and clearly stated in the opinion of the former Chief Justice, in the case of *Downey* v. *Murphey*, 1 Dev. & Bat., 82, that little more is

required of us than to reproduce some portions of what is there declared. " After proof of capacity and execution," he remarks, " the common law lays down no rule upon the subject, but submits the general question to a jury for a decision according to their conclusions upon the actual facts of undue influence, imposition on the testator, his knowledge of the contents of the paper and assent thereto, under the comprehensive inquiry *whether a fraud has been practiced.* Where the testator's situation is such as to render the perpetration of a fraud, easily practicable, the jury may say they are not satisfied one has been practiced, and thence infer its existence, unless the contrary be clearly shown. * * * But those are conclusions of fact arising from evidence given or withheld. A defect of proof, unless it be a total defect, is for the consideration of a jury wherever the law requires the intervention of a jury."

After a further reference to the relation between the testator and beneficiary, he proceeds to say : " These considerations must satisfy the mind, that upon such a subject the law cannot lay down as a test that a will is or is not valid, when executed under one or more of the particular circumstances mentioned, but necessarily refers the facts, upon which its validity legally depends, *to the decision of the jury under evidence as to all the circumstances attending its preparation or execution, the condition, mental and physical, of the testator, the contents of the instrument and the benefits provided in it for those actively concerned either in the preparation or execution.* * * * This question is one of fact to be decided by the jury upon evidence, which in the opinion of the judge is competent as tending to establish any of those facts. Its tendency, it is the province of the judge to explain, by stating what conclusions may be drawn from it; but whether it establishes a fact or whether a conclusion deducible from it is or is not rebutted by other evidence, is the province of the jury to say."

So in *Wright* v. *Howe, supra,* where the decedent and lega-
tee stood in the relation of attorney and client, *patron* and
*dependent* (the italics are in the original), the jury were
charged " that dealings between persons bearing these re-
lations, one to the other, are to be suspected and scruti-
nized more closely and carefully than dealings between
others," this court declared that " these relations as facts
pertinent to the issue with the other facts in the cause,
bearing upon the point, were submitted to the jury with
proper instructions. This is all we think the court was
authorized to do by the law of the land. * * * Alto-
gether, these form a body of facts from which undue in-
fluence may or may not be inferred. *But this inference
should be drawn by the jury and not by the court.*"

A similar distinction is taken in other cases, where a judge
tries both facts and law, and himself lays down general
rules for his own consistent government, and those in which
he submits facts to a jury, and leaves them to act upon evi-
dence according to their estimate of its import and weight.
*State* v. *Williams,* 2 Jones, 257 ; *State* v. *Smith,* 8 Jones, 132.

The instruction that certain detailed facts, if believed,
were a badge of fraud, stands upon the same footing and
were left to the jury to be considered with other evidence
in determining the question of fraudulent influence.

There is no error. Let this be certified.

No error.                                         Affirmed.