FLORENCE V. LAWTON and others v. NORWOOD GILES and others.

*Judge's Charge, exception deemed to be taken—Negligence—Injury to property from fire.*

1. If there be error in the charge of the judge, it is deemed excepted to without filing any formal objection by the party complaining (THE CODE, ₴412), and may be taken advantage of for the first time in this court.

LAWTON *v.* GILES.

2. The plaintiffs' house was destroyed by fire, communicated by sparks emitted from the smoke-stack of the defendants' mill (located in the city of Wilmington), and in an action for damages for the injury resulting from the alleged negligence of the defendant ; *Held :*

(1). The burden of showing care and diligence, and the use of improved appliances to avoid accident, rests upon the defendant.

(2). Where, upon the evidence in such case, the judge charged the jury that if sparks were emitted in operating defendants' mill and fell on neighboring houses which could be thereby readily set on fire, it was negligence to run the mill without curing the defect in the appliances ; and if the defect could not be remedied and the sparks must necessarily pass out and fall on buildings likely to be thus set on fire, then the defendant had no right to operate the mill at all ; *it was held,* that while the latter part of the charge as a separate proposition is error, yet when taken *in connection with the whole* charge as set out in the case, it is qualified by the direction that the same cannot be operated without the owner's being liable for damages to others from fire thus communicated.

(*State* v. *Dunlop,* 65 N. C., 288; *State* v. *Jones,* 87 N. C., 547; *Ellis* v. *Railroad,* 2 Ired., 138; *Aycock* v. *Railroad,* 89 N. C., 321; *Anderson* v. *Steamboat Co.,* 64 N. C., 399, cited and approved).

CIVIL ACTION tried at January Special Term, 1884, of NEW HANOVER Superior Court, before *Gilmer, J.*

The action is for damages resulting from the alleged negligence of defendants in causing the burning of plaintiffs' house. The case is stated in the opinion of this court. Verdict and judgment for plaintiffs; appeal by defendants.

*Messrs. Russell & Ricaud,* for plaintiffs.
*Mr. George Davis,* for defendants.

SMITH, C. J. Late in the afternoon on March 13th, 1881, the plaintiffs' house, constructed of wood and with shingle roof, some hundred yards distant from the rice mill of the defendants, operated by steam power in the city of Wilmington, was set on fire and badly burned, as alleged, from sparks issuing out of the smoke-stack of the mill, attributable to the negligent management of them and their servants, and the want of due precaution in providing against their escape. On the day of the

occurrence the wind was blowing with a velocity of from fourteen to sixteen miles an hour in the direction of the plaintiffs' house.

There was much testimony offered in reference to the emission of sparks of considerable size from the pipe at different times before the fire, of the excellent construction of the furnace and arrangement and working of the engine, to guard against injury to the property of others, and to secure safety to the owners. There had been upon the top of the pipe a spark-arrester, or covering cap with wire gauze or net-work to prevent the passing of large burning cinders, but this, not being deemed necessary and greatly obstructing the draught and the efficient working of the machinery, had been removed and was not in use.

Experts who had examined the mill testified to its being supplied with modern improvements and appliances that greatly contributed to its safety, and that the escaping smoke, when it left the furnace, passed through a flue of twenty-six feet, and then up the smoke-stack some sixty-seven feet more, before being poured out into the open air, and that this arrangement afforded protection against the communication of fire, greater than that derived from spark-arresters placed on short pipes, such as were in use on steamboats and locomotives, and rendered them unnecessary.

The testimony is given in detail, but so far as it relates to the defence, the above general statement will suffice to render intelligible the objections here made to the charge, for no exceptions appear in the record to have been taken to any part of it.

The issues submitted to the jury, and the responses to each, were:

1. Was the plaintiff's house burned by the emission of sparks or other inflammable matter from defendants' mill? Yes.

2. Was the injury to the plaintiff's house caused by the negligence of the defendants? Yes.

3. What damages, if any, did the plaintiff sustain? Five hundred dollars.

The testimony was mainly directed to the second issue involving the question of negligence on the part of the defendants.

The entire charge of the court is set out in the case, as well as in the special instructions given at the instance of the plaintiffs, which, under a recent change in the law, are "deemed to be excepted to without any formal objections," and consequently are brought up for consideration by an appeal. THE CODE, §412, par. 3.

The charge, the correctness of several portions of which is denied in the argument for the appellant in this court, is as folllows:

"As a general principle, the plaintiffs, owning a house in the city of Wilmington, were entitled to enjoy it freed from injury caused through another's negligence, and the defendants, owning and operating a rice mill in the same city, had the right to do so, if they so conducted and managed their mill and machinery as not to injure others. The defendants having chosen steam to operate their mill, this being recognized as a dangerous element in itself, are held by the law to a very high degree of care and skill, as railroad and steamboat companies, &c., and if in such business as they were engaged in, there was known and in use any apparatus which, applied to their engine, would enable it to consume its own sparks, and thus prevent their emission to the consequent ignition of combustible matter of others, it was negligence in them if they did not avail themselves of such apparatus."

"But they were not bound to use every possible precaution which the highest scientific skill might have suggested, nor to adopt an untried machine or mode of construction. While the law does not require absolute scientific perfection in the construction of such works as the defendants used, it does require the exercise of a high degree of care and skill to ascertain, as near as may be, the best plan for their structure."

If the defendants, at the time of the fire, had availed themselves of all the discoveries which science and experience had put in their reach, and had constructed their machinery so per-

fect as to prevent the emission of sparks or other inflammable material calculated to ignite adjoining property, then they have done all the law requires, and would not be guilty of negligence. But if you find the machinery of the defendants used on the day of the fire not so perfect as to prevent the emission of sparks or other inflammable matter calculated to ignite adjoining or neighboring property, they would be guilty of negligence; and the fact that they had in use such machinery, &c., as was in common and general use and had been approved by experience, would not relieve them."

In response to the request of the plaintiffs' counsel, the jury were further directed:

1. "If the defendants' mill, situated in the heart of the city, frequently emitted live sparks, which, blown by the wind, fell on neighboring property in a condition likely to ignite, it was negligence in them to operate the mill without curing the defect, and if the mill could not be operated without the emission of sparks likely to ignite, they had no right to operate it at all."

2. "It was their duty to use sufficient appliances, such as spark-arresters, to prevent the emission of sparks, and if, previous to the fire, they had used such precautions and thereby secured safety to adjacent property, and they afterwards removed them, and the fire would not have occurred, but for the removal, this was negligence."

3. "If the plaintiffs' house was covered with old shingles when defendants erected their mill, and the house was endangered thereby, the law did not require the plaintiffs to remove the shingles, and in not removing them they were not chargeable with contributing negligence."

4. "If the plaintiffs' house was burned by the defendants, the burden is on them to exonerate themselves by showing that they exercised diligence to prevent mischief."

5. "If the running of the mill on this occasion was not such as to endanger adjacent property under ordinary circumstances, yet if at the time a gale at the speed of fifteen miles an hour was blowing and had been so blowing during the day, and thus such

property was exposed to greater peril from sparks or other inflammable matter, it was the defendants' duty to use additional, and, as compared with other times, extraordinary precautions, to the extent of stopping their mill for the day, or until the gale was over."

6. "If sparks came from the mill, as insisted by the plaintiffs, before the fire, it was the defendants' duty to know the fact and to use some efficient means to prevent their escape."

The exceptions to the charge, relied on here in argument, and nowhere specified in the record as necessary under the former practice, are to be examined and passed on, and these we now proceed to consider:

1. The first objection is to the general terms in which the principles of law are conveyed in the instructions, instead of declaring and applying the law to the facts in the different aspects in which they are presented in the testimony.

It is the duty of the judge to explain and adapt the law to any authorized findings which the jury may make upon the evidence, and this is the requirement of the statute (THE CODE, §413), which directed him, after stating the evidence, to " declare and explain the law arising thereon,"as construed in *State* v. *Dunlop*, 65 N. C., 288, and *State* v. *Jones*, 87 N. C., 547.

But we do not think the charge obnoxious to the objection. The general rules laid down to guide the jury are appropriate to the testimony given in and both the testimony for the defence, consisting largely of the opinions of experts, being of necessity very general. The directions, if a correct exposition of the law upon an assumed state of facts, were such as would enable the jury to understand and apply it in arriving at a proper response to the issue of negligence.

2. Exception is taken to the instruction, number 4, that if the plaintiffs' house was set on fire from combustible material coming from the smoke-pipe of the mill, the burden of proving the use of proper care and diligence in exoneration devolved upon the defendants.

This instruction conforms to the rule laid down in *Ellis* v.

*Railroad*, 2 Ired., 138, and approved in *Aycock* v. *Railroad*, 89
N. C., 321, in these words: "Where the plaintiff shows damage
resulting from the defendant's act (fire communicated from a
passing train to property near the track), which act, with the
exertion of proper care, does not ordinarily produce damage, he
makes out a *prima facie* case of negligence, which cannot be re-
pelled but by proof of care or some extraordinary accident
which renders care useless."

The reason for the exception to the general rule that one
required to allege must prove negligence, in the case of fire
caused by steam engines, is thus stated in a late and valuable
treatise: "All information as to the construction and working
of its engines is in the possession of the company, as are also
the means of rebutting the charge of negligence entirely in its
power.   An outsider can hardly be expected to prove that in the
construction of the engine, or in the use of it, at the time the
injury occurred, the company was guilty of negligence.   He
can only prove that his property was destroyed by one of the
company's locomotives; and having done this, it is but proper
to call on the defendant to show that he was not negligent, that
he employed careful and competent servants, and that he had
used the most improved appliances to *prevent the escape of fire
from his engines.*"   1 Thomp. Neg., 153, par. 3.

This, says the author, is the ruling of the courts of England,
of Missouri, Illinois, Tennessee, Wisconsin, Nebraska, Nevada,
and perhaps Minnesota, while in numerous other states (in which
this state is erroneously included), some further proof is required
of the plaintiff.

3.   A third and more serious complaint is made of the terms
of the first instruction asked and given, in that, the jury were
told that "if the mill could not be operated without this emis-
sion of sparks likely to ignite, they (the defendants) had no
right to operate it all."

Considered by itself and as a separate proposition, the lan-
guage would convey a meaning to which we are not ready to
assent, that is, as a denial of the right to put up and run a mill

driven by steam, unless absolute safety against fire could be secured. But this is the concluding part of a single instruction, and must be interpreted in connection with what precedes and qualifies its import.

The charge in substance is, that if the mill in the midst of a city frequently sent out sparks which, carried by the wind, fell on neighboring property in condition to be readily set on fire, it was negligent to run the mill without curing the defect which allowed them to escape, and if the defect was irremediable and the combustible material must necessarily pass out and fall on buildings likely to be thus ignited, then the mill should not be run at all, that is, not run without the owners incurring the responsibility for consequences when a fire did occur. Thus understood, the direction is not erroneous, and is the direct result of the principle imparted in the maxim " *sic utere tuo ut alienum non lœdas.*"

The jury had been before reminded of the absence of a spark-arrester, as a precautionary measure against accidental fires, in preventing the escape of large and flaming cinders, from which the principal peril comes, and which in the opinion of the experts was needless, while it interfered seriously with the draft required by the furnace; and the jury were told in substance that if the escape of flaming sparks, so imperiling the property of adjoining proprietors, could not be restrained, as seems to have been contended in exoneration of the defendants, they had no right to operate the mill; that is, not to operate it without being liable for the damages to others resulting from the fire thus communicated.

Taking the entire charge into consideration, with the parts to which objections are specially pointed, we think the law was fairly and fully explained, and the legal relations existing between those who may use steam as a motive force in a crowded city and those whose property may be exposed thereby to unusual perils, correctly stated, securing to the former all their just rights, and a reasonable immunity and safe-guard to the property of the

latter near by. The rule of responsibility may be stringent, but protection should be afforded against unusual dangers, by requiring the adoption of all reasonable means to prevent an injury.

We have not wandered over the many and conflicting rulings to be found in the reports of the different states, nor made a vain attempt of reconciling them upon a common basis, but we have preferred to pursue the line of decisions marked out in our own. There may be less use for a spark-arrester where coal is employed as a fuel, as we suppose it is used mostly in the states of the north and west, than in our own, where wood is employed from which larger ignited flakes of unconsumed material are poured out of the mouth of the pipe, but it would seem to be a reasonable requirement here, and so it was held in *Anderson* v. *Steamboat Co.*, 64 N. C., 399.

There is no error, and judgment must be entered for the plaintiffs, with costs.

No error.                                          Affirmed.