J. H. CASHWELL v. FAYETTEVILLE PEPSI-COLA BOTTLING WORKS.

(Filed 17 October, 1917.)

**1. Negligence—Explosives—Pepsi-Cola—Res Ipsa Loquitur.**

The fact that a bottle of pepsi-cola, filled under pressure, bursted while being handled by a purchaser for resale, and injured him, does not of itself make out a *prima facie* case of negligence against the vendor who had bottled the pepsi-cola, under the doctrine of *res ipsa loquitur*, in the absence of evidence that he had failed in his duty to exercise proper care and attention in selecting the bottles to be thus used and in subjecting them to the pressure required for the purpose.

**2. Same—Inspection—Evidence—Prima Facie Case—Trials.**

Where there is evidence that a bottle of pepsi-cola exploded in the hands of a purchaser for resale, and other bottles of the vendor had bursted under similar circumstances; that it was the duty of the vendor's employee, engaged in such work, to inspect the bottles before subjecting them to the pressure required, and it appears that an explosion of bottles so filled does not occur in the largest majority of instances: *Held*, sufficient upon the defendant's actionable negligence in failing to exercise due care in regard to filling and selecting the bottle which exploded and caused the injury, and to raise a *prima facie* case of negligence for the defendant to meet with his proof; and a motion to nonsuit upon the evidence will be denied.

**3. Same—Change of Management—Appeal and Error.**

Where, upon sufficient evidence, the jury has found that the plaintiff was injured by the defendant's negligence in furnishing him pepsi-cola improperly bottled, testimony admitted in plaintiff's behalf that the management had since been changed, without suggestion that it was because of the negligence of the former manager, who had nothing to do with the bottling of the mixture, is not sufficient to disturb the verdict on appeal.

**4. Trials — Attorney and Client — Law — Argument to Jury — Decisions — Facts.**

It is proper for an attorney, in arguing his case to the jury, to read the facts in an opinion of the Supreme Court in another case to the extent necessary to apply the principle of law involved in that case to the facts of the case at bar.

**5. Instructions — Court — Improper Remarks — Undisputed Facts — Negligence.**

Where it is not seriously disputed that the injury for which damages are sought in the action was caused by the bursting of a bottle of pepsi-cola while being handled by a purchaser for resale, and there is evidence that it had been improperly bottled by the vendor, a statement by the judge in his charge to the jury that the plaintiff was injured by the bursting of the bottle, is not improper, when he correctly tells them that it amounted to nothing unless it was caused by defendant's negligence.

**6. Vendor and Purchaser — Contracts — Explosives—Pepsi-Cola—Duty Implied.**

Under a contract of sale of pepsi-cola bottled by the vendor, the duty is implied that the seller of the mixture, put up in the bottles and heavily

charged with carbonic acid gas, would use care therein proportionate to the risks to others, so as to avoid inflicting a personal injury on them from an explosion of the bottles.

7. Negligence — Contributory Negligence — Evidence — Explosives—Pepsi-Cola.

Where the seller of pepsi-cola has failed in his duty to properly bottle the mixture, and an injury is thereby caused to a purchaser for resale by an explosion of one of the bottles, the circumstances of the injury thus caused are insufficient alone as evidence of contributory negligence on the part of the purchaser.

APPEAL by defendant from *Lyon, J.,* at March Term, 1917, of SAMP-SON.

*Butler & Herring and J. Abner Barker for plaintiff.*
*F. M. Wooten and Kenan & Wright for defendant.*

WALKER, J. The plaintiff sued for personal injuries caused by the bursting of a pepsi-cola bottle, sold to him by defendant, which he was handling in his business as a storekeeper. He alleged that the explosion was caused by the defendant's negligence. There was evidence tending to show that while the plaintiff was placing some of the bottles taken from a crate on the shelves of his store, one of the bottles burst, or exploded, and so injured his eye that he lost the sight of it.

The plaintiff insisted that the mere fact of the explosion is sufficient to carry the case to the jury, under the doctrine of *res ipsa loquitur,* but we understand that this fact alone was held to be insufficient as evidence of negligence in *Dail v. Taylor,* 151 N. C., 284, where it appeared that the plaintiff in that case had been injured by the bursting of a coca-cola bottle. Before there can be a recovery for negligence, it must be shown that the person who is sought to be held liable is the author of it has omitted some legal duty which he owed to the injured party. Such breach of duty could be said to exist when a vendor sells goods having a latent defect of a kind likely to cause some physical injury to the vendee, and of which the vendor was aware or which he should have ascertained by proper care and attention (Wharton on Negligence, sec. 774; 29 Cyc., pp. 430-431), and may be referred to the general principle announced in the notable case of *Heaven v. Pender,* 11 L. R. (1882-'83), p. 503, where it was said that "Whenever one person is by circumstances placed in such a position towards another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, duty arises to use ordinary care and skill to avoid such danger." *Dail v. Taylor, supra.* Referring to this statement of the principle, it is said.

in that case by *Justice Hoke:* First, "Considering the case in this aspect, it is very generally held that, in a claim of this character, a plaintiff is not required to establish his case by direct proof, but the issue must be submitted to the jury whenever facts are shown forth in evidence from which a fair and reasonable inference of negligence may be made." Speaking to this question, in Sherman & Redfield on Negligence, sec. 58, the authors say: "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not required to prove his case beyond a reasonable doubt, though the facts shown must be more consistent with the negligence of the defendant than the absence of it. It has never been suggested that evidence of negligence should be direct and positive. In the nature of the case, the plaintiff must labor under difficulties in proving the fact of negligence, and as that fact is always a relative one, it is susceptible of proof by evidence of circumstances bearing more or less directly on the fact of negligence—a kind of evidence which might be satisfactory in other classes of cases open to clear proof. This is on the general principle of the law of evidence which holds that to be sufficient and satisfactory evidence which satisfies an unprejudiced mind." This statement is cited with approval in the opinion of the Court in *Fitzgerald v. R. R.,* 141 N. C., 530-534, and in that case it was held as follows: "Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances; and if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence." There are instances where this requirement is met by simply proving the occurrence and the resultant injury—a doctrine which finds expression in the phrase, *'Res ipsa loquitur,'* and which has been considered and applied in several recent decisions of this Court, as in *Fitzgerald's case, supra; Ross v. Cotton Mills,* 140 N. C., 115; *Stewart v. Carpet Co.,* 138 N. C., 60; *Womble v. Grocery Co.,* 135 N. C., 474." Discussing the principle, *"Res ipsa loquitur,"* it is said, in Labatt on Master and Servant, sec. 843, quoted with approval in some of the cases referred to: "The *rationale* of the doctrine is that in some cases the very nature of the occurrence may of itself, and through the presumption it carries,

supply the requisite proof; it is applicable when, under the circumstances shown, the accident presumably would not have happened if due care had been exercised. The essential import is that, on the facts proved, the plaintiff has made out a *prima facie* case without direct proof of negligence."

It was contended by the plaintiff, in *Dail v. Taylor, supra,* that the authorities we have cited above applied to his case, and the mere bursting of the bottle was sufficient to show *prima facie,* at least, that there was negligence on the part of the defendant; but this Court thought that the adoption of that view of the law would not be safe, and that some additional evidence should be required to make out a *prima facie* case for the plaintiff. It was ruled, though, that where it appeared that bottles of the defendant, filled with coca-cola, had exploded on other occasions, under similar circumstances, it was evidence sufficient to be submitted by the court to the jury on the question of negligence, as it was not merely conjectural, but formed a basis for a reasonably safe inference that the defendant had not exercised that degree of care which the law exacted of him, under the circumstances, and was proof of that kind of probability as to the conduct of the defendant which was mentioned in the decisions of the Court already cited and quoted from. This principle of the law has been clearly recognized and applied in numerous cases. In *Simpson v. Lumber Co.,* 133 N. C., at pp. 101 and 102, we said: "Where the plaintiff shows damage resulting from the defendant's act, which act, with the exercise of proper care, does not ordinarily produce damage, he makes out a *prima facie* case of negligence, which cannot be repelled but by proof of care or of some extraordinary accident which renders care useless. *Aycock v. R. R.,* 89 N. C., 321; *Lawton v. Giles,* 90 N. C., 374; *Piggot v. R. R.,* 54 E. C. L., 228; *Craft v. Timber Co.,* 132 N. C., 151; *Ins. Co. v. R. R.,* 132 N. C., 75. In *Aycock v. R. R.,* 89 N. C., 329, the Court, through *Smith, C. J.,* says: 'A numerous array of cases are cited in the note (2 A. and E. R. R. Cases, 271) in support of each side of the question as to the party upon whom rests the burden of proof of the presence or absence of negligence, where only the injury is shown, in the case of fire from emitted sparks.' " See, also, *Currie v. R. R.,* 156 N. C., 419, and the more recent case of *Simmons v. R. R.,* at this term. It is contended by the defendant, though, that the class of cases referring to the emission of sparks from railroad locomotives does not apply here, but we do not see why it does not, when there is added to the fact of the explosion proof of similar occurrences; and the further fact, which is not denied, that in almost the largest majority of instances, where filled bottles are sold in the trade, there have been no such explosions. The fact last mentioned leads fairly and reasonably to the conclusion that there was something wrong or a failure

to exercise due care in the filling of the bottles which did explode. As
the pressure came from the inside, the explosions have taken place outwardly and scattered fragments of the broken glass in every direction.
A jury might form more than a mere conjecture, or a guess, that the
bottle had been improperly and carelessly charged with the carbonic
acid gas. We do not see how the pressure from exploding gas could be
otherwise than outwardly, and the manner in which the bottle exploded,
and the effect of the explosion,.show that the force applied to the walls
of the bottle was internal, and there was nothing there that could have
produced the explosion except the gas. It will be well here to refer to
the testimony. Will Harrison testified: "I work for defendant; have
been its bottler for 10 years. I and the other boy that works there
handle all the bottles. When a car of bottles come to the depot, we take
them out of the car, inspect them, one by one, and put them in the
crates, with racks—each bottle is in a rack to itself. We throw defective
bottles away. We then carry the good ones to the storehouse and store
them away until we get ready to use them. We take them out and wash
them, rinse them and put them in boxes and carry them over to the
machines. When we are washing them, we look through for broken or
defective bottles and throw them away. None of them are washed by
machinery. When we are ready to fill the bottles, we examine them
again and throw away all defectives ones. . . . I handle the bottles
carefully. I am as careful as I can be. After I have the bottles filled,
I take four at a time, hold them between me and a light, look for cracked
bottles and trash, and set all defective bottles aside. I never let a
defective bottle go through the plant if I know it. I am instructed to
look over the bottles and set the bad ones aside. I was bottling for the
defendant all of the summer and fall of 1914. No one else bottled while
I was there. . . . We do not bottle every day, but we do in the summer and fall. I get sick sometimes; cannot tell who bottles when I am
sick. In the carbonator there is water and gas, at the same pressure of
75 pounds. The gas from the drum makes the pressure. You can get as
high as 200 pounds of gas from the drum. You could get the gauge so
that you could get too much gas. . . . I have noticed, in opening
pepsi-cola, that if it is not quite full it makes a louder noise than if it
is full. This is caused by gas in the bottle." If there is no reliable evidence in this record of what caused the explosion, and that the cause
was an irresistible force from within, which force was the expansion of
the gas or an excessive quantity of it, there can be no possible way of
proving it. On a motion to nonsuit, the plaintiff is entitled to have the
evidence receive the construction most favorable to him, and to have
rejected all that is unfavorable, so that the portion of it which tends to
support his case may alone be taken into account. Thus viewed, we are

of the opinion that there was evidence of negligence, which was properly left to the jury by the court, under correct instructions.

We do not think that the evidence as to the single change of management is sufficient to justify a reversal. The witness stated that "the management was changed only once; Mr. Hooker purchased the business in February and put a new manager there, and in 1915 Mr. Hooker put Mr. Parsons there." But we do not comprehend how there was any harm done, even if there was a change, as it does not appear, even inferentially, that it was made because of any negligence of Hooker or Parsons. They did not handle the bottles personally, nor was any fault in connection with the explosion imputed to them. The evidence as to the many explosions was clearly admissible. *Dail v. Taylor, supra.* The comments of Mr. Butler on *that* case before the jury were legitimate and proper, as they were intended to show that facts, in law, would constitute negligence, and what was relevant evidence of these facts. He was not reading the facts in that case for the purpose of showing how the jury should find the facts to be in this case. The Court said, in *Horah v. Knox,* 87 N. C., 483 : "We are unable to see upon what grounds the course pursued in the argument of counsel, in the particular made the subject of exception, can be deemed an abuse of the right expressly given by statute 'to argue to the jury the whole case, as well of law as of fact' (Rev. Code, chap. 31, sec. 57, par. 15), and more especially under the enlarged privilege conferred by a more recent statute (Laws 1874-'75, chap. 144), as interpreted in *S. v. Miller,* 75 N. C., 73. It is true that the statement of facts contained in an adjudicated case cannot be read to the jury as evidence of their existence in another cause, as pertinent to a pending inquiry, as is declared in *Mason v. Pelletier,* 82 N. C., 40; nor can the writings and opinions of medical experts contained in a written treatise be used as evidence before a jury. *Melvin v. Easley,* 46 N. C., 386; *Huffman v. Click,* 77 N. C., 55. But the reading of the reported case was not for such purposes, but to illustrate a principle of law based upon the supposed, though they may have been actual, facts decided by a Court of high authority. Without the facts, the principle expressed in an abstract form would be of little value in instructing the judicial mind. All treatises upon the law illustrate a legal proposition and challenge its acceptance as correct, by reciting the facts and material circumstances under which it has been held, and the practice of reading from them, as from the report of adjudged cases, is universal and unquestioned in an argument upon a point of law arising in the course of the trial. The privilege of counsel may be abused, but unless grossly abused, the corrective must be left in the hands of the judge who presides and conducts the trial, in the exercise of his sound discretion." That case has since been frequently approved. In *Betts v.*

*Telegraph Co.,* 167 N. C., at p. 81, it is said: "The objection to Mr. Gatling's statement to the Court of the facts in *Spence v. Telegraph Co.,* which was decided here by a *per curiam* order, is not tenable. Counsel was addressing the .court upon a question of law, and trying to show the similarity between the facts of that case and those of 'this one, for the purpose of arguing to the court that *Spence's case* was an authority for the position he had taken during the trial of this case below." Counsel was acting strictly within his rights, and the cases of *Horah v. Knox,* 87 N. C., 483; *Harrington v. Wadesboro,* 153 N. C., 437; *Chadwick v. Kirkman,* 159 N. C., 259, and *S. v. Corpening,* 157 N. C., 623, fully sustain the ruling of the Court. In those cases the counsel was reading the facts of another case to the jury for the purpose of applying the law of the case to the one in hand, and it was held proper for him to do so. It was not improper in the judge to state to the jury that it appeared that plaintiff was injured by the bursting of the bottle, because there was no serious dispute as to it being the cause of the injury, but he correctly told the jury that it amounted to nothing unless it was caused by defendant's negligence. How could the defendant have been harmed by such a statement from the court? We have commented already upon some of the other exceptions, in passing on the motion to nonsuit. The testimony of Harrison as to the care he used in the examination of bottles for the detection of flaws likely to cause explosions, and the rejection of the suspicious ones, afforded some additional proof to that of the accident in connection with the explosion itself, and the other explosions that had taken place in the warehouse and elsewhere, to show negligence. There can be no doubt that adequate care should have been used by the defendant in examining, inspecting, or testing the bottles previously to discover any defects liable to cause an explosion, or to increase the probability of one, and to "sniff" the bottles for the purpose of expelling the air, in order that they might be properly filled and charged with the gas, but the latter is of an explosive character and should be carefully handled, so that an excessive quantity may not be introduced, for in such a case a slight rise of temperature might produce sufficient expansion of the gas to cause precisely what happened in this case. The great care exercised by Harrison in his inspection and search for cracks and flaws tends to prove that the explosion came from the inside and not because of any defect in the bottle, and resulted from a too careless use of the gas, or from an overcharge of it. From the contract of sale with the defendant, the duty was implied that the seller of the pepsi-cola, put up in bottles and heavily charged with a dangerous and explosive substance, such as carbonic acid gas, would use care and diligence, proportional to the risk of injury, to see that his customer was not unduly exposed to the danger of the bottles bursting and inflicting personal

injury. The law is thus stated in 29 Cyc., at pp. 479, 480: "The manu-. facturer or vendor who deals with an article imminently dangerous in kind owes to the public a .positive and active duty of employing care, skill, and diligence to limit that danger. In such case the liability does not rest upon the ground of warranty, although a warranty may afford an element of the tort by putting the party injured off his guard and so rendering the negligence effective. Nor does it depend on privity of contract, but arises from a duty not to expose the public to danger. Articles of the kind under consideration are *dangerous chemicals, explo-sives,* poisons, or dangerous drugs. But where the proper care has been used, no liability attaches, nor where the injury occurs through a use of the article other than that for which it was furnished." It is said, at p. 478, that the duty of the seller to exercise proper care in respect to dangerous articles is enhanced in the case of these persons with whom he has contracted, and if the wrongful act be not imminently dangerous to life or property, the negligent vendor is liable only to the party with whom he has a contractual relation. But however this may be, we think that in this case there was some evidence for the jury on the question of negligence, and even strong evidence, that the bottle was excessively filled with gas.

There was no sufficient evidence, in law, to show any contributory negligence of the plaintiff. No obvious danger was presented to him, in the presence of which he continued to handle the bottles, when a man of ordinary prudence and discretion would have refrained from doing so. He had the right to rely on the assurance that the defendant had performed its duty and so inspected and filled the bottle as to prevent any such catastrophe as has resulted in the loss of his eye, or at least reduced the danger to such a minimum as could be attained by the exercise of proper care and caution. A seller may not have knowledge of a danger lurking in his goods, but this lack of knowledge may be produced by his failure to exercise proper care to acquire it; and knowledge is not an essential or requisite element of liability for the consequence, if the dangerous character of the goods could be eliminated by the use of that degree of care which the law requires of him under the circumstances. Abstract propositions of law, not pointed to the facts of the particular case, or not pertinent to them, very often are misleading, and should not be given to a jury for guidance to a correct verdict. There are some other exceptions, but we think that we have fully covered the ground with respect to those having any merit. The material issues and contentions of the respective parties were carefully set forth by the learned judge, and his charge to the jury is free from any just criticism. He was entirely fair to both parties, and so put the case before the jury that there could be no possible misconception as to the real subject of inquiry

or as to the evidence and the law bearing thereon. We are disposed to believe that, upon all the issues, the court was more than fair to the defendant, and the latter has no reasonable grounds for complaint. The charge embraced every essential feature of negligence, contributory negligence, assumption of risks, and damages, and applied the law correctly in every instance.

We have discovered no error in the case, or record, and must therefore decline to dismiss the action or award a new trial, for which the defendant has asked.

No error.