## LEO BROWN v. COOK-LEWIS FOUNDRY COMPANY.

(Filed 3 November, 1915.)

1. **Master and Servant—Orders of Master—Negligence—Trials—Evidence—Insufficient Help—Questions for Jury.**

    In an action against a foundry company to recover damages for a personal injury, when there is evidence that the plaintiff, an inexperienced helper, informed the head molder that the help he had for lifting a box weighing two thousand pounds was insufficient, and was told, in reply, to "Go ahead; the help is sufficient," and in consequence thereof the box fell upon the plaintiff and injured him when thus being lifted, and there is further evidence that, in fact, the help was insufficient, it raises a question as to the actionable negligence of the defendant therein to be determined by the jury.

2. **Master and Servant—Coemployees—Contributory Negligence — Trials — Evidence—Nonsuit.**

    In an action to recover damages for a personal injury caused by the defendant's negligence in not providing sufficient help in lifting a two-thousand-pound box, and there is evidence to sustain the allegation, the burden of proof is on the defendant to show, when relied upon as a defense, that the injury was due to the plaintiff's contributory negligence, or that of his colaborers; and where the defendant fails to introduce his evidence thereof, a judgment as of nonsuit should not be entered, the evidence introduced being viewed in the light most favorable to the plaintiff.

**3. Master and Servant—Safe Appliances—Negligence—Trials — Evidence — Proper Appliances—Instructions.**

Where there is evidence tending to show that the injury complained of, in an action to recover damages for personal injury, was caused by the negligence of the defendant in failing to furnish sufficient help to raise a box weighing two thousand pounds, the exclusion of testimony by the trial judge, that a crane accessible at the time was a proper way to handle the box, and his expression that the defendant was not required to keep up with the inventive genius of Edison or George Westinghouse, etc., constitute reversible error.

APPEAL by plaintiff from *Rountree, J.,* at March Term, 1915, of FOR-SYTH.

*J. B. Craver, A. E. Holton and J. B. Poindexter for plaintiff.*
*Watson, Buxton & Watson for defendant.*

CLARK, C. J.  This was an action for personal injury sustained by the alleged negligence of the defendant.  The plaintiff's allegation and proof was that while acting as general helper in the foundry he was called on by John Hartle, the head molder, to help turn a box which contained a mold and sand, the box being about 4½ feet by 2 feet deep.  The plaintiff testified that the box and contents weighed about 2,000 pounds, and he told Hartle that the three men were not enough to handle the box, but was directed to "go ahead."  He was then directed to go around to the other side to let it down, and it fell on his foot, crushing it.  He says that he had never seen that work done before, and when he said to the molder, "There are not enough men here to handle this thing," he replied, "Yes, there is; go ahead."  There were other witnesses who testified that it would require four men or five to properly handle the box; that three men could turn it only by hard straining, and that they were very cramped for space, only twelve or thirteen inches between this box and another, and when the box was let down it dropped on his foot.

Upon this evidence, it was error to direct a nonsuit.  The facts are almost identical with those in *Pigford v. R. R.,* 160 N. C., 93, where the plaintiff told the foreman that he needed more men to help him load, but the foreman said, as here, "Go ahead," and *Walker, J.,* in a very full and well-reasoned opinion, held: "When a servant is injured within the scope of a dangerous employment by the negligent act of the master in not furnishing him sufficient and competent assistance, and the master's negligence is the proximate cause of the injury, the servant is not held to have assumed the risk of the master's negligent act, and can recover unless his own negligence contributed to the injury as the proximate cause," and in that case the Court sustained a verdict for the plaintiff.

In this case, the defendant contends that the injury was caused by the contributory negligence of the plaintiff or by the negligence of his fel-

low-servants, or was an accident. It was an accident only in the sense that it was not intentionally done. If there was evidence of any negligence of the plaintiff or of his fellow-servant, it was a matter of defense and for the jury. Upon the plaintiff's testimony, the injury occurred because of insufficient force to hold back the box in letting it down, as he was ordered to do, and upon a nonsuit the evidence must be taken in the light most favorable to the plaintiff. *Morton v. Lumber Co.,* 152 N. C., 54. The defendant introduced no evidence.

The plaintiff also excepted because the court refused to allow him to show by an expert, a foreman in another foundry, that "the proper way to handle these boxes was by a crane; that it was safer to do so with a crane, and it was not as safe to handle these boxes by hand as by a crane." The judge refused this evidence, saying that "Factories do not have to keep up with Edison and his inventive genius or George Westinghouse, but they have to use the safety appliances in general use." In the exclusion of the evidence and in the reason given, the court erred. A crane is a mechanical device for raising heavy weights, in universal use for that purpose. It is not a recent invention of Edison or Westinghouse, but has been in general use for many centuries. The evidence shows that there were "two cranes in this very factory, one on the inside and one on the outside, and that these boxes could have been filled in reach of the crane." One of these cranes stood within fifteen feet of this box.

So far from the crane being of recent invention, Livy tells us (Book XXIV, ch. 34) that at the siege of Syracuse by Marcellus, 2,100 years ago, Archimedes, by the use of cranes projecting over the seawall, dropped heavy grappling irons on the decks of the Roman vessels, which, breaking through, took hold of the timbers, and then, by means of his cranes (in military Latin, *"tolleno,"* *i. e.,* "lifter"), he drew the vessels up on end, and then, dropping the vessels, he dashed them to pieces. Smaller cranes had doubtless been in use for ordinary purposes long before that time, and they have been in general use ever since. The same incident is told by Plutarch in his Life of Marcellus.

The evidence as to the failure to use the cranes, and that it was safer to use them, should have been admitted.

The judgment of nonsuit is

Reversed.