This action was to recover damages for alleged negligence on the part of defendants, causing the death of plaintiff's intestate.
There were also allegations in the complaint that plaintiff's intestate's death was caused by the false and fraudulent representation on the part of said C.C. Perry as agent of defendant as to weight of a certain tombstone which the intestate undertook to haul and, in doing so, came to his death.
Defendants answered, denying liability. On motion made in apt time, there was judgment of nonsuit and plaintiff excepted and appealed.
There was evidence on the part of plaintiff tending to show that in November, 1916, C.C. Perry, as agent for his codefendant Palmer, had sold to one E.D. Avery a tombstone for his wife and same had been shipped by railroad to Cove City, N.C. to be thence carried and erected at Asbury Church, about five miles distant from the station; that the shipment, consisting of the headstone with base, a footstone and coping, also of stone, to enclose the grave, had been placed on the platform, and this coping proved or estimated to be about half of the entire weight, had been hauled to the church on the Saturday before by another person; that on the day in question the intestate, who owned a farm in and near Cove City, was there on business with his cart and, learning that the stone was to be hauled, applied to do the work, and the offer was accepted by Perry, who was there in charge, the cart not then being present. This cart, an ordinary one-horse vehicle, having an iron axle with two regular cart wheels with iron tires and superstructure, two shafts of hewn cypress, 5 by 6 inches in size and 13 feet long, eight feet of which was for the body under which the shafts were connected by rings inserted at intervals in bored holes and with uprights also in the shafts. The remaining five feet was for the mule and which was hitched to the first rung. That when intestate drove up to the station platform with his mule and cart, defendant Perry said to him, "That cart is not going to hold that stone," and intestate replied: "How much do you think it weights?" and Perry replied "1,650 pounds," and said: "There is a round out in front of your cart; you had better get a wagon to haul it in." That intestate replied that his mule hauled that much *Page 405 
guano and would haul it all right, and, being advised by (381) some one to get some timbers 2 by 4 for an additional strength to the bed of the cart, intestate did so. The cart was loaded under his supervision and started on the way. About 2 1/2 miles from Cove City the road crossed a bridge over a creek which had some rise in the approach and at the further end there was a drop from the bridge to the road of 2 or 3 inches. The mule pulled the load up the rise and over the bridge, and as the cart went off the bridge, intestate jumped up on the shafts next the mule, and there being no chain or other contrivance to hold the stone steady in its place over the axle, it slipped forward some inches, broke both shafts, sliding down on intestate and crushed him so that he soon thereafter died.
There were facts in evidence tending to show that the stones loaded by intestate weighed 2,350 pounds, which with the crate would probably run it to 2,500 pounds, and that the cart, if correctly loaded, would have hauled safely as much as 2,000 pounds, but not as much as 3,000; that Perry had not seen the stone till it came to the station; that the weight of the entire shipment was 3,000, raised by the railroad to something over 3,100, as shipping weight, and this included the coping, which was something near one-half of the whole shipment; that the stone was sold by weight and the design of this stone called for a weight of 1,650 pounds, and the data in Perry's possession all tended to show that 1,650 pounds was the true weight or very near it; that intestate was a farmer about 32 years of age, owning property and doing the ordinary work of a farmer in lifting and hauling things of weight that came to hand in the course of the work, and that he had also worked some in the lumbering business. There was also evidence tending to show that in the loading of the stone into the cart, which was done under intestate's supervision, there were, as stated, no chains or other arrangement by which the weight could be held in its proper place over the axle, and that the break was caused by reason of the stone slipping forward on the shafts chiefly at the drop from the bridge to the dirt road.
On perusal of this record, and in full recognition of the accepted principle that, on a motion for nonsuit, consideration may be given only to facts and legitimate inferences therefrom which tend to support plaintiff's position, we are of opinion that, in this testimony, in no aspect of it, can a recovery be sustained by plaintiff either for a negligent or intentional wrong.
In Ramsbottom v. R. R., 138 N.C. 38, negligence, as a constituent part of an actionable wrong, was said to exist when there had been "a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiffs under the circumstances in which *Page 406 
they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with a like duty."
(382) It is not usual that the legal duty referred to is involved in the ordinary adjustments for breaches of a contract, though a contract may create the conditions out of which the added duty will arise, as shown in the case of Dail v. Taylor, 151 N.C. 284, an action by a vendee of a lot of Coca-Cola against the vendor and manufacturers for physical injuries caused by an explosion of one of the bottles. Inasmuch as it appeared that some serious injury was likely to follow unless due care was used in bottling this preparation, it was held that, in the absence of any specific warranty to that effect, the vendor and manufacturer was required to use such care, and, for a breach of duty in this respect and which was the proximate cause of the injury, an action would properly lie. A like ruling has been recently made in Cashwell v. Bottling Works, 174 N.C. 324. Again, this form of liability is at times superimposed by the law in certain kinds of contracts, as in case of contracts of carriage with public service companies, where, for reasons of public policy, a strict performance of the stipulated duties are required, as instanced in Pickett v. R. R.,153 N.C. 148, particularly the concurring opinion of Associate JusticeAllen.
Construing the record in view of these principles, so far as defendant Palmer was concerned, he did nothing personally in the matter except to ship the stones properly crated pursuant to his contract and it is not contended that he is in any way responsible, except in so far as it may arise from the conduct of his codefendant Perry at the time and within the course and scope of his agency, and as to the latter, as heretofore stated, we see nothing in this transaction which shows or tends to show any negligent breach of duty on his part.
This is not a case of master and servant within the technical and usual meaning of the term, where certain recognized duties exist by reason of the relationship, as in Brown v. Foundry Co., 170 N.C. 38, but the men were dealing at arm's length with the subject matter of the agreement before them and equally open to the observation of both. All the evidence, both of plaintiff and defendants, tends to show that Perry had not seen these stones till he saw them on the station platform, where it had been placed by the consignee and purchaser and, according to plaintiff's own testimony, the only statement he made about the weight was in the effort to dissuade the intestate from the use of the cart, which did not appear to him to be sufficiently strong or secure for the purpose, and though he seems to have been mistaken in his estimate, for it was evidently given only as an estimate; "What *Page 407 
do you think it weighs?" was the question asked by deceased, it was a true statement according to all the data that he had, both the shipping weight and the design and the price, based upon weight, all tending to show that 1,650 pounds or more was the correct weight.
And there was nothing concealed or withheld or probably (383) threatening in the making of such a contract, assuredly none that was not equally open to both. As heretofore stated, the stone was there to show for itself. The question of its weight was well within the intestate's intelligence and experience; by the terms of the contract, he was to have it loaded and did supervise and direct the loading of it himself, and on the facts presented, we are clearly of opinion that an action predicated upon a negligent breach of duty cannot be sustained against either of defendants.
It was alleged in the complaint and urged on the argument that defendants could be held liable by reason of false and fraudulent statements on the part of the agent Perry, but, as shown by the evidence and the testimony in behalf of plaintiff, his statements were correct, according to all the data that Perry had and were made, not with a view of enticing the deceased into the contract but in the endeavor to prevent him from undertaking the work without getting another vehicle.
There is, therefore, no element of deceit or fraud in the transaction, and on the facts in evidence the judgment of nonsuit must be affirmed.
Affirmed.