## SPRING TERM, 1916

W. H. WARD, Administrator, v. MOREHEAD CITY SEA FOOD COMPANY.

(Filed 23 February, 1916.)

**Fish and Oysters—Unsafe Condition—Knowledge—Duty of Packer—Negligence—Evidence—Questions for Jury—Trials.**

Where the packer of salt fish puts this article of food on the market for sale in a dangerous condition it is its duty to protect the public from the consequences thereof, when it should have known the danger from the circumstances or is afterwards informed thereof; and where the retail dealer has sold the plaintiff's intestate fish from a shipment from the packer, which had theretofore made its customers in several localities sick, resulting in the death of one of them, of which the packer had been informed, and there is further evidence that there was a delay by the defendant in cleaning and packing the fish for thirty-six hours after they were placed on the wharf in the month of September, and that except for the unreasonable delay of the defendant (packer) in notifying the retailer, by telegram or otherwise, the intestate's death might not have resulted, the defendant is liable for negligence.

APPEAL by defendant from *Cooke, J.,* at December Term, 1915, of CHOWAN.

*Pruden & Pruden, Ehringhaus & Small,* and *E. G. Bond* for plaintiff.
*W. M. Bond, Jr.,* and *Guion & Guion* for defendant.

CLARK, C. J. This is an action for the death of the plaintiff's intestate, caused, as admitted by the defendant and found by the jury, by eating salt mullets bought by plaintiff's intestate from W. S. White, a retail grocery dealer in Edenton, who had bought them from the defendant, the original packer of the mullets. The defendant in its answer admits

3—171

that it shipped the mullets to said retail dealer on 18 September, 1914, and that said White offered them for sale in its regular business.

The plaintiff alleged its cause of action under three different heads:

1. That there is a warranty which runs with the sale of food for human consumption that the article is fit for food and does not contain dangerous and deleterious substances, injurious or fatal to human life and health. This cause of action is presented under the second and third issues, which were answered by the court in the affirmative as a matter of law and as a result of the answer by the jury to other issues.

2. That said packer, the defendant, was negligent in the preparation of said mullets; and that said fish were unfit and dangerous for human consumption, which condition was known or ought to have been known by the defendant, and was due to its careless and negligent preparation of the fish and lack of care in packing.

3. That after the fish were sold by the defendant to said retail dealer, and before plaintiff's intestate had eaten them, the defendant was put on notice by information that some of the same lot of fish shipped to said retailer had made people dangerously ill, and that the defendant could have gotten information to the said retailer to stop the sale of said fish in time to have warned the plaintiff's intestate, and thus could have prevented his eating them; and that failure to do so was negligence which caused the death of plaintiff's intestate.

The authorities are numerous that there is an implied warranty that runs with the sale of food for human consumption, that it is fit for food and is not dangerous and deleterious. *Watson v. Brewing Co.,* 1 L. R. A. (N. S.), 1178; *s. c.,* 110 Am. St., 157. It is not necessary to discuss this question or that of the liability of the subsequent dealer who buys the articles in good faith from a reputable manufacturer or wholesale dealer without notice of any defect, for the issues as to the negligence of the defendant are sufficient to support the judgment.

4. The fourth issue is, "Was the death of the plaintiff's intestate brought about by the negligence of defendant, as alleged?" This issue was comprehensive of the idea of negligence, alleged in the complaint in the preparation, care, and packing of the fish, and also as to the duty and care of giving notice if the defendant could thereby have avoided the injury, and it was sufficient, for the defendant presented its evidence upon both points.

Both the State and Federal Governments have enacted statutes to protect the public against impure articles of food. Our statutes, Revisal, sec. 3969, *et seq.,* and Revisal, 3442 and 3444, make it an indictable offense, under certain circumstances, to sell adulterated food. When the defendant had put this food on the market for sale, if it was in a dangerous condition it was the defendant's duty to protect the public from

the consequences thereof. There was evidence that there was a delay by the defendant in cleaning and packing this fish for some thirty-six hours after they were placed on the wharf in the month of September. They knew the effect upon fish of that delay in one of the most heated months of the year.

The defendant learned, on the very day that this particular lot was shipped to the retail dealer who sold the plaintiff's intestate, that fish from this lot were making people sick. A second notice was received on the following day that this had happened in several localities. A little later the defendant learned that a man had been actually killed by eating fish from the same lot. The defendant recognized its duty to notify those to whom it had sold to stop the sale, by writing letters, but it failed to do what an ordinarily prudent man would have done under the circumstances, in that it did not wire immediately to the parties to whom this lot had been sold and did not even mail a letter till twenty-four hours after receiving notice. There was evidence that if a telegram had been promptly sent the life of the intestate might have been saved.

The evidence is that eleven persons in five families were made sick by buying of this lot of fish from White, a retail dealer in Edenton, of whom the deceased bought. The defendant consented that the first issue, that "the death of the intestate was caused by eating the mullets bought of White, the retail dealer, and which had been shipped to him by the defendant for sale," should be answered "Yes."

There was evidence to justify the finding of the jury that there was negligence on the part of the defendant which was the proximate cause of the death of plaintiff's intestate.

Upon consideration of all the exceptions we find

No error.