S. M. BROADWAY v. J. C. GRIMES AND W. T. GRIMES, TRADING AS LEXINGTON COCA-COLA BOTTLING COMPANY.

(Filed 3 May, 1933.)

1. **Food A a—Manufacturer may be held liable by ultimate consumer for deleterious substance negligently mixed with drink.**

    The manufacturer or bottler of drinks owes the duty of using due care to see that the bottled beverage contains no noxious substance, and where foreign and deleterious substances are negligently mixed with the drink which is bottled in opaque glass which would prevent the discovery of the noxious substance upon reasonable inspection by the consumer, the manufacturer may be held liable to the ultimate consumer who purchased it from an intermediate dealer for the injury caused thereby although there is no contractual relation between the manufacturer and the ultimate consumer

2. **Same—Evidence of negligence on part of manufacturer of bottled drink held sufficient to be submitted to the jury.**

    The mere fact of injury from the drinking of a bottled beverage is not proof of negligence on the part of the manufacturer or of proximate cause, but the evidence in this case is held sufficient to justify the verdict of the jury establishing negligent failure of inspection, injury, proximate cause and damage.

**3. Same—Evidence that other bottles contained foreign substance held competent in consumer's action against manufacturer.**

In an action by the ultimate consumer of a bottled drink to recover for injuries caused by a noxious substance contained therein, evidence that other drinks bottled by the defendant contained foreign substance is held competent when properly confined by the court.

APPEAL by defendants from *Shaw, Emergency Judge,* at October Term, 1932, of DAVIDSON. No error.

The plaintiff brought suit to recover damages for injury caused by drinking from a bottle of coca-cola which contained some noxious foreign substance. His allegations are that he drank a part of the contents and suffered a burning sensation in his throat, stomach, and other internal parts of his body; that he immediately became sick and upon examination found in the bottle a brown, green, and black substance, some of it floating and some adhering to the bottle; and that he was thereby poisoned.

The plaintiff bought the coca-cola from a retail dealer who had purchased it from the defendant, by whom it had been bottled. The contention was that the defendants had negligently permitted a poisonous substance to be intermixed with the coca-cola.

The defendants denied all the averred acts of negligence and alleged that they had used the best procurable machinery for cleansing and filling the bottles, had inspected every bottle, had employed skilled labor, and had exercised all reasonable care in the prosecution of their business.

The plaintiff testified in support of his complaint that the bottle contained green slime, half as long as his little finger; that the drink burned his mouth, throat, stomach, and caused nausea; that he could not sleep; that he lost in weight and was under treatment about four months.

A medical expert found sediment in the bottle and a large black lump about an inch in diameter, with flakes around it, floating in the solution. He testified that he had found the plaintiff's mouth red, congested, irritated; that he was sick, weak, and highly nervous; and that "some powerful irritant had upset him."

The defendants offered evidence in rebuttal, and the two issues of negligence and damages were answered by the jury in favor of the plaintiff.

Judgment for the plaintiff and appeal by defendants upon assigned error.

*Spruill & Olive for plaintiff.*
*Raper & Raper for defendants.*

ADAMS, J. It is not controverted that the defendants bottled the beverage and sealed it in "a regulation coca-cola bottle with a regulation cap," or that they sold it to a distributor, or that the plaintiff purchased it in due course of trade and ultimately became the consumer. The regulation bottle is opaque or colored to such extent that a noxious substance in it would not as a rule be readily observable. The verdict establishes the negligence of the defendants and the consequent injury suffered by the plaintiff. The first question is whether the defendants as manufacturers of the drink were under legal obligation to the plaintiff to exercise reasonable care that the article sold contained no substance likely to cause injury to health.

On this question there is divergence of opinion. There are decisions which in these circumstances hold the defendant to strict accountability; there are others which limit liability to injury caused by negligence connected with some contractual dealing or relation of the parties. The opposing views are set forth in exhaustive opinions recently delivered in the House of Lords in *M'Alister v. Stevenson,* (1932) Appeal Cases, Law Reports, 1932, 562. There a shopkeeper sought damages from a respondent, who was a manufacturer of aerated waters, for injuries she suffered as a result of consuming part of the contents of a bottle of ginger-beer which had been manufactured by the respondent, and which contained the decomposed remains of a snail. It was averred that the bottle had been purchased for the appellant by a friend in a cafe; that the bottle was made of dark opaque glass and that the appellant had no reason to suspect that it contained anything but pure ginger-beer; that the beer was poured into a tumbler and that the appellant drank some of the contents of the tumbler; that a friend was then proceeding to pour the remainder of the contents of the bottle into the tumbler when a snail, which was in a state of decomposition, floated out of the bottle; that as a result of the nauseating sight of a snail in such circumstances and in consequence of the impurities in the ginger-beer which she had already consumed the appellant suffered from shock and severe gastroenteritis. The appellant further averred that the ginger-beer had been manufactured by the respondent to be sold as a drink to the public (including the appellant); that it had been bottled and labelled by the defendant and sealed with a metal cap. The negligence of the respondent was specifically set out. The Lord Ordinary held that the averments disclosed a good cause of action, but the Second Division of the Court of Sessions dismissed the action, and an appeal was taken.

Five opinions were delivered in which the various aspects of the case were considered and the judgment of the Second Division was reversed and that of the Lord Ordinary was restored. Special interest was attached to the subject, *Lord Atkin* observing, "I do not think a more

important problem has occupied your Lordships in your judicial capacity." The decision was rendered in 1932.

On the one hand it was said that the only safe rule is to confine the right to recover to those who enter into the contract, and that where the product of manufacturers is widely distributed throughout the country "it would seem little short of outrageous to make them responsible to members of the public for the condition of the contents of every bottle which issues from their works." It was argued that if such responsibility attached to manufacturers they might be called on to meet claims of damages which they could not possibly investigate or answer.

The approved principle was thus stated by *Lord Atkin:* "A manufacturer puts up an article of food in a container which he knows will be opened by the actual consumer. There can be no inspection by any purchaser and no reasonable preliminary inspection by the consumer. Negligently, in the course of preparation, he allows the contents to be mixed with poison. It is said that the law of England and Scotland is that the poisoned consumer has no remedy against the negligent manufacturer. If this were the result of the authorities, I should consider the result a grave defect in the law, and so contrary to principle that I should hesitate long before following any decision to that effect which had not the authority of this House. I would point out that, in the assumed state of the authorities, not only would the consumer have no remedy against the manufacturer, he would have none against any one else, for in the circumstances alleged there would be no evidence of negligence against any one other than the manufacturer; and, except in the case of a consumer who was also a purchaser, no contract and no warranty of fitness, and in the case of the purchase of a specific article under its patent or trade name, which might well be the case in the purchase of some articles of food or drink, no warranty protecting even the purchaser-consumer."

In this opinion reference is made to the "illuminating judgment" of *Cardozo, J.,* in *McPherson v. Buick Motor Co.,* 217 N. Y., 382. The defendant in that case was a manufacturer of automobiles. It sold an automobile to a retail dealer. The retail dealer sold it to the plaintiff. While the plaintiff was in the car, it suddenly collapsed, and he was thrown out and injured. It was held that the defendant owed to the plaintiff the duty of care and vigilance. The manufacturer's liability for negligence, it was said, is not limited in principle to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction; and if the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. "If to the element of danger there is added knowledge that the thing will be used by persons other

than the purchaser, and used without new tests, then irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

It is upon this principle, by the decided weight of authority, that manufacturers and bottlers of beverages are held to be liable to consumers who purchase from intermediate dealers for injury caused by the drinking of a beverage which was unfit for human consumption because of negligence on the part of the manufacturer or bottler.

Those who manufacture or bottle beverages represented to be harmless and refreshing are subject to the duty of using due care to see that in the process of preparing the article for sale no noxious substance shall be mixed with the beverage. This is the prevailing doctrine. Accordingly recovery against the manufacturer or bottler has been allowed for injury suffered by swallowing pieces of glass, a cigar stub, the remains of a decomposed mouse, and other foreign substances negligently intermixed with the drink. *Watson v. Augusta Brewing Co.,* 1 L. R. A. (N. S.), (Ga.), 1178; *Jackson Coca-Cola Bottling Co. v. Chapman,* 64 So. (Miss.), 791; *Coca-Cola Bottling Co. v. Barksdale,* 88 So. (Ala.), 36; *Boyd v. Coca-Cola Bottling Works,* 177 S. W. (Tenn.), 80; *Rozumailski v. Philadelphia Coca-Cola Bottling Co.,* 145 At. (Pa.), 700.

This Court has had occasion to maintain the principle as applicable to injury resulting from the sale of unwholesome food (*Ward v. Sea Food Co.,* 171 N. C., 33; *Harper v. Bullock,* 198 N. C., 448), and from the explosion of glass bottles containing coca-cola, pepsi-cola, or ginger ale charged with gas to a high degree of pressure. *Dail v. Taylor,* 151 N. C., 285; *Cashwell v. Bottling Works,* 174 N. C., 324; *Grant v. Bottling Co.,* 176 N. C., 256.

In *Broom v. Bottling Co.,* 200 N. C., 55, the plaintiff was awarded damages for injury caused by swallowing broken glass negligently left in a bottle of coca-cola, the manufacturer being liable to the consumer although between them there was no contractual relation; and the mere failure of the purchaser to make an examination of the contents before drinking from the bottle does not as a matter of law defeat his right of recovery. *Atlanta Coca-Cola Bottling Co. v. Sinyard,* 164 S. E. (Ga.), 231.

It is true that the fact of injury is not proof of negligence or proximate cause; but the evidence offered on behalf of the plaintiff justifies the verdict, which includes a finding of negligent failure of inspection, injury, proximate cause, and damages. There was therefore no error in the court's refusal to dismiss the action.

Exception was taken to evidence tending to show that on several occasions preceding the act complained of foreign substances were found in

CLARK v. DRUG CO.

other bottles of coca-cola prepared by the defendant; but the admissibility of this evidence has often been approved and when properly guarded is not to be questioned. *Dail v. Taylor, supra; Grant v. Bottling Co., supra; Perry v. Bottling Co.,* 196 N. C., 175; *S. c., ibid.,* 691. We have examined all the exceptions and find

No error.