J. E. ETHERIDGE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 20 June, 1934.)

1. **Master and Servant C b—Evidence of Master's failure to exercise due diligence to furnish reasonable tools held for jury.**

   The evidence tended to show that plaintiff was employed to scrape a bridge preparatory to painting it, that he was given a steel scraper, that he had asked for goggles to protect his eyes and was promised same, but that they were never furnished, that goggles were furnished by another employer for employees doing similar work, and that while scraping the bridge the employee was injured by a piece of rust which flew in his eye. *Held,* the evidence was sufficient to be submitted to the jury under the principle that in case of simple tools the employer may be held liable if the injury is caused by a lack of such tools, and injury could have been reasonably foreseen from the failure to furnish same.

2. **Evidence D h—Testimony of other occurrence held incompetent, the required identity of circumstance and proximity of time being lacking.**

   Plaintiff employee was injured when a piece of rust flew in his eye while he was cleaning a bridge with a steel scraper preparatory to painting it. Over defendant's objection testimony of another employee was admitted to the effect that he was injured when hit by a steel scraper about a quarter of an inch thick while cleaning steel above his head preparatory to painting same. *Held,* the testimony objected to should have been excluded, the occurrence testified to by the witness not being related to the occurrence causing the injury in suit either by the required substantial identity of circumstance or proximity of time.

3. **Appeal and Error J g—**

   Exceptions to the charge of the lower court are not considered on this appeal as a new trial is awarded for error in the admission of evidence.

   SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Moore, Special Judge,* at October Term, 1933, of HALIFAX.

Plaintiff alleged and offered evidence tending to show that on 12 February, 1931, he was in the employment of the defendant as a steel bridge painter. It appeared that the plaintiff first entered the employment of the defendant in 1925, and was an experienced workman.

The narrative of the injury as detailed by the plaintiff is substantially as follows: "I was working at Castle Hayne . . . under T. E. Thornton. . . . I was cleaning a bridge, preparing to paint it, working with a steel scraper about four inches wide and ten inches long. Mr. T. E. Thornton furnished me the scraper. Mr. Thornton was the foreman. I was doing the work in accordance with his instructions as to how to do it. . . . The passenger train had dumped some garbage on the side of the bridge and I got down to clean it to

prepare it for painting and a piece of rust flew and hit me in the eye. I crawled up on the guard-rail and told the boys. I wiped the piece of rust out of my eye. . . . I got down and continued to work until the 15th, and I went to Fayetteville to see an eye specialist and couldn't see one and got some medicine from a drug store. . . . Prior to the time I was hurt I asked my foreman for goggles and he said he would get them for me as soon as he could. After he had promised me these goggles I worked there, I thought I would get the goggles and I kept on at work. It was two or three weeks after he had promised to furnish me with these goggles before I was hurt. Something like that. . . . The steel particle flew in my left eye. I have no ability to see out of that eye. . . . I had the scraper hitting the steel like this and the rust hit me in the eye. It had accumulated from the garbage that came from the passenger train and when I hit it the rust hit me in the eye. There is no difference between steel particle and a piece of rust only steel is a little harder than rust. I have had very serious physical pain on account of the injury to my eye." On cross-examination the plaintiff testified: "I asked for goggles twice in 1927 and in 1928. From 1928 to 1931 I did not ask him for goggles any more because I couldn't get them when I asked for them. I didn't know I was not going to get them when I asked for them, but I thought it. . . . I reckon I had gotten dust in my eye twenty-five times prior to 1921. . . . I got it in there practically every day or two. . . . There was no defect in this steel scraper. . . . The piece that flew in my eye was not off of the scraper. It was a piece of rust and the scraper was not rusty. . . . Mr. Thornton gave us the tools and told us what to do, told us to clean the rust to paint the bridge when we went to work that morning, went there and showed us how to do it. . . . At the time of my injury the Seaboard Air Line Railway furnished goggles to men engaged in similar work. . . . I worked in 1928, 1929, 1930, and up until 12 February, 1931, upon the promise that he would give me the goggles. I thought he would get them."

A witness for plaintiff, named Robert Keeter, was asked by counsel for plaintiff if he had suffered an injury while cleaning steel preparatory to painting. He answered: "I was standing on the scaffold board beating over my head. I was hurt in Weldon with a scraper and in Richmond with a hammer." (Q.) "How were you hurt in Weldon?" (A.) "With plain piece of steel about a quarter of an inch thick. Mr. Thornton furnished me that steel. Working with that steel scraper in that way I was working and as I was directed to do the work if I had had goggles, the steel or rust could not have gotten in my eye." 

The defendant objected to all the foregoing testimony and moved to strike out the answers. The evidence was admitted and defendant excepted.

The following issues were submitted to the jury:

1. "Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?"

2. "Did the plaintiff assume the risk of his injuries?"

3. "What damage, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered the first issue "Yes"; the second issue "No," and the third issue "$1,500."

From judgment upon the verdict the defendant appealed.

*No counsel for plaintiff.*
*Thos. W. Davis, Dunn & Johnson and Spruill & Spruill for defendant.*

BROGDEN, J. (1) What duty does the law impose upon an employer with respect to furnishing particular tools or appliances to a workman in performing particular types of work?

(2) Was the evidence of certain injuries sustained by the witness Keeter, competent?

This case is built upon the theory that it was the duty of the defendant in the exercise of ordinary care to furnish goggles to the plaintiff. The leading goggle cases in this State are: *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Jefferson v. Raleigh,* 194 N. C., 479, 140 S. E., 76. The facts in *Whitt v. Rand, supra,* are almost identical with those in the present case. The standard of duty in such cases was stated as follows: "A perusal of our decisions on the subject will show that in order for liability to attach, in case of simple, everyday tools, it must appear, among other things that the injury has resulted from a lack of such tools or defects therein which the employer is required to remedy, in the proper and reasonable discharge of his duties, and that the lack or defect complained of and made the basis of the charge is of a kind from which some appreciable and substantial injury may be reasonably expected to occur." In the *Jefferson case* the legal standard of liability was expressed in these words: "So, in the present case, if a lighter hammer or hack-saw, or goggles to protect the eyes of the workman, should have been provided in the exercise of that prevision which the law requires, or if a person of ordinary prudence could reasonably foresee or anticipate that injury would likely flow from the method employed, the defendant would be liable."

Therefore, the court is of the opinion that the trial judge properly submitted the issue of negligence to the jury.

The second question of law involved, presents the familiar principle of the competency of evidence of similar injuries or occurrences. Obviously, in a broad and practical sense it is the duty of trial courts to

try one case at the time. For this reason the law has built a hedge or fence designed to exclude, except under proper and pertinent circumstances, the "lugging in" of extraneous and collateral matters. The limitation of the competency of such evidence is clearly stated in *Perry v. Bottling Co.,* 196 N. C., 690, 146 S. E., 805, as follows: "Evidence of similar occurrences is admitted where it appears that all the essential physical conditions on the two occasions were identical; for under such circumstances the observed uniformity of nature raises an inference that like causes will produce like results, even though there may be some dissimilarity of conditions in respect to a matter which cannot reasonably be expected to have affected the result." See, also, *Perry v. Bottling Co.,* 196 N. C., 175, 145 S. E., 14; *Broadway v. Grimes,* 204 N. C., 623, 169 S. E., 194. The same limitation is stated in *Conrad v. Shuford,* 174 N. C., 719, 94 S. E., 424, in which the Court said: "But we base the relevancy of this testimony upon the ground that the conditions and circumstances were substantially the same and the two occurrences were separated only by a very brief interval of time," etc. The testimony of witness Keeter discloses neither the substantial identity of circumstances nor proximity of time which the law contemplates, and consequently such testimony should have been excluded.

There are certain exceptions to the charge, but as a new trial must be awarded it is deemed inadvisable to undertake to anticipate the course of a future hearing.

New trial.

SCHENCK, J., took no part in the consideration or decision of this case.