OF

# NORTH CAROLINA

AT

# RALEIGH

---

## SPRING TERM, 1935

---

### WILLIE THOMASON v. BALLARD & BALLARD COMPANY.

(Filed 20 March, 1935.)

1. **Trial D e—Voluntary nonsuit on cause of action based on negligence held admission for purpose of trial that defendant was not negligent.**

   Plaintiff sued the manufacturer for alleged negligence in the preparation of a sack of flour sold by the manufacturer to a retailer and purchased from the retailer by plaintiff, and for breach of implied warranty that the flour was wholesome and fit for human consumption, plaintiff alleging damage from a foreign and deleterious substance in the flour. Upon the trial plaintiff took a voluntary nonsuit on his first cause of action. *Held:* The voluntary nonsuit was an admission, at least for the purpose of trial, that defendant was not guilty of negligence in the manufacture or packing of the flour.

2. **Food A a—There is no implied warranty on part of manufacturer to consumer that food is wholesome and fit for human consumption.**

   As between the manufacturer and the ultimate consumer, there is no implied warranty that food prepared and sold by the manufacturer to a retailer and purchased from the retailer by the consumer, is wholesome and fit for human consumption, there being no contractual relation between the manufacturer and the ultimate consumer to which such warranty could attach, and in an action by the ultimate consumer against the manufacturer, based upon such implied warranty, the manufacturer's motion to nonsuit should be allowed.

CLARKSON, J., dissenting.

APPEAL by defendant from *Clement, J.,* at May Term, 1934, of DAVIDSON. Reversed.

This is an action to recover damages for personal injuries suffered by the plaintiff, and resulting from sickness caused by his eating bread made from flour which he had purchased from the City Grocery Company, at Lexington, N. C., on 22 July, 1933.

It is alleged in the complaint that the flour, from which the bread which the plaintiff ate was made, was manufactured by the defendant at Louisville, Kentucky, and was packed by the defendant in a sack, which was fastened at its top by a wire, before it was sold and shipped to the City Grocery Company at Lexington, N. C.; that after the flour was purchased by the plaintiff from the City Grocery Company, it was delivered at plaintiff's home in Davidson County, North Carolina, in the sack in which it was packed by the defendant in Louisville, Ky.; that the flour was poured from the sack by the plaintiff's wife into a bin in his kitchen cabinet and was used by her in making bread for plaintiff and his family; that after he had eaten the bread made from the flour, the plaintiff became sick, and that this sickness was caused by the unwholesome condition of the flour; and that when about half the flour in the bin had been used for making bread, the decomposed and putrid body of a dead rat was discovered in the flour, and that because of the presence of the body of the rat in the flour, the flour was unwholesome and unfit for use as a food.

Two causes of action are alleged in the complaint.

As his first cause of action, the plaintiff alleges that at the time the sack of flour which he purchased from the City Grocery Company was sold and shipped by the defendant to said grocery company, the body of the rat was in said flour, and that its presence in the flour was the result of the negligence of the defendant, as alleged in the complaint.

As his second cause of action, the plaintiff alleges that when the defendant sold and delivered the sack of flour to the City Grocery Company, for resale to its customers, it impliedly warranted that the flour in said sack was wholesome, and fit for human consumption; that this implied warranty was made by the defendant to customers of the City Grocery Company; and that there was a breach of said implied warranty, which caused plaintiff personal injuries for which he is entitled to recover of the defendant damages for the injuries which he suffered from eating bread made of said flour.

There was evidence at the trial tending to show that the dead body of the rat was in the sack of flour at the time it was sold by the defendant to the City Grocery Company; that the flour in the sack was unwholesome and not fit for human consumption, because of the presence in the flour of the dead body of the rat; and that plaintiff suffered personal injuries caused by his eating bread made from this flour.

At the close of the evidence for the plaintiff, the plaintiff took a voluntary nonsuit on his first cause of action, and resisted the motion of the defendant for judgment as of nonsuit on his second cause of action. The motion was denied, and defendant excepted.

The defendant then offered evidence tending to show that the body of the rat was not in the sack of flour at the time the flour was shipped by the defendant from Louisville, Ky., to the City Grocery Company at Lexington, N. C., and that the flour in the sack at said time was wholesome and fit for human consumption.

At the close of all the evidence the defendant again moved for judgment as of nonsuit. The motion was denied, and defendant excepted.

Issues were submitted to the jury, and answered as follows:

"1. Was the flour purchased by the plaintiff of the City Grocery Company on or about 22 July, 1933, manufactured by the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. Was there an implied warranty by the defendant that the flour manufactured by it was fit for human consumption, as alleged in the complaint? Answer: 'Yes.'

"3. If so, was there a breach of said warranty? Answer: 'Yes.'

"4. What damages, if any, has the plaintiff sustained because of the breach of the said warranty? Answer: '$175.00.' "

From judgment that plaintiff recover of the defendant the sum of $175.00, and the costs of the action, the defendant appealed to the Supreme Court.

*Don A. Walser and Phillips & Bower for plaintiff.*
*Sapp & Sapp for defendant.*

CONNOR, J. The only question presented by this appeal is whether there was error in the refusal of the trial court to allow defendant's motion, at the close of all the evidence, for judgment as of nonsuit.

During the progress of the trial the plaintiff took a voluntary nonsuit on his first cause of action. He thereby abandoned his contention that the defendant was negligent with respect to the manufacture or packing of the flour which he had purchased from the City Grocery Company. His contention thereafter was that the defendant was liable to him, as the consumer of the flour, on an implied warranty that the flour was wholesome and fit for consumption as a food, at the time the defendant sold and delivered the flour to the City Grocery Company. This was, in effect, an admission by the plaintiff, at least for the purposes of the trial of this action, that the presence of the rat in the sack of flour was not the result of any failure on the part of the defendant to exercise due care in the manufacture or packing of the flour from which the bread which he ate was made.

There are decisions in this jurisdiction to the effect that as between a vendor and his vendee there is an implied warranty that the personal property sold by the vendor and purchased by his vendee was fit for the use for which it was sold and purchased, and that the vendor is liable to his vendee for a breach of this warranty. *Swift v. Aydlett,* 192 N. C., 330, 135 S. E., 141; *Poovey v. Sugar Co.,* 191 N. C., 722, 133 S. E., 12; *Swift v. Etheridge,* 190 N. C., 162, 129 S. E., 453.

There are no decisions, however, in this jurisdiction to the effect that there is any implied warranty as between a manufacturer and an ultimate consumer of a food product, which was purchased by the consumer from a retail merchant to whom the manufacturer had sold the food, for resale. It is true that in *Ward v. Sea Food Co.,* 171 N. C., 33, 87 S. E., 958, it is said that the authorities are numerous, that there is an implied warranty that runs with the sale of food for human consumption, that it is fit for food and is not dangerous and deleterious. In that case, however, the defendant was held liable to the plaintiff upon the finding by the jury that the death of plaintiff's intestate was brought about by the negligence of the defendant with respect to food which the defendant had sold to the retail merchant from whom plaintiff's intestate had bought the food.

In *Corum v. Tobacco Co.,* 205 N. C., 213, 171 S. E., 78, it is said: "There are many decisions to the effect that one who prepares in bottles or packages foods, medicines, drugs, or beverages and puts them on the market is charged with the duty of exercising due care in the preparation of these commodities, and under certain circumstances may be liable in damages to the ultimate consumer. *Broadway v. Grimes,* 204 N. C., 623, 169 S. E., 194; *Broom v. Bottling Co.,* 200 N. C., 55, 156 S. E., 152; *Harper v. Bullock,* 198 N. C., 448, 152 S. E., 405; *Grant v. Bottling Co.,* 176 N. C., 256, 97 S. E., 27; *Cashwell v. Bottling Works,* 174 N. C., 324, 93 S. E., 901."

In the absence of allegation and proof of negligence on his part with respect to the manufacture or preparation of a food product, the manufacturer is not liable as upon an implied warranty to an ultimate consumer for damages resulting from injuries caused by the condition of the food, which the consumer has purchased from a retail merchant to whom the manufacturer sold the food for resale. There is no contractual relation between the manufacturer and the consumer to which an implied warranty with respect to the food can attach. The manufacturer owes the duty of exercising a high degree of care in the manufacture and preparation of food for human consumption, and for a breach of this duty he may and should be held liable to the consumer. The law does not, however, make him an insurer of his products, or hold him liable solely upon an implied warranty to one with whom he had no contractual relation.

THOMASON *v.* BALLARD & BALLARD CO.

There was error in the refusal of the trial court to allow defendant's motion for judgment as of nonsuit.

The judgment is

Reversed.

CLARKSON, J., dissenting: The plaintiff purchased from a retailer a 24-pound sack of flour, manufactured by the defendant, and it was alleged that said sack of flour contained a dead rat, which made it unfit for food for human consumption. There were allegations for an action in tort, and also in contract, but the former action was abandoned, and the case was tried upon the theory of a breach of warranty. The jury found there was a breach of warranty, and that the plaintiff was entitled to damages in the amount of $175.00. The case is now before us on the question as to whether or not there was an implied warranty from the manufacturer to the defendant, an ultimate consumer, that the flour contained in a sack, packed in the plant of the plaintiff, was wholesome and fit for human consumption.

There is a conflict in the decisions as to the theory of liability of defendant in this class of cases, some holding that an action must be based upon negligence alone; others that it may be founded upon an implied warranty; and still others that, where an implied warranty exists, it does not extend to third parties. Some of the decisions in North Carolina based upon the theory of negligence by the defendant are set forth in *Corum v. Tobacco Co.,* 205 N. C., 213; *Broadway v. Grimes,* 204 N. C., 623; *Broom v. Bottling Co.,* 200 N. C., 55; *Grant v. Bottling Co.,* 176 N. C., 256; yet the doctrine of implied warranty was recognized by the late *Chief Justice Walter Clark,* speaking for a unanimous Court, in *Ward v. Sea Food Co.,* 171 N. C., 33. In that case it was held that the defendant was liable to the plaintiff upon the finding by the jury that the death of plaintiff's intestate was caused by the negligence of the defendant with respect to salt fish sold by the defendant to the merchant from whom the deceased bought the food. While the decision in that case was grounded upon negligence, it was pointed out that the authorities were numerous; that there is an implied warranty which runs with the sale of food for human consumption that it is fit for food, and is not dangerous and deleterious. That case did not involve a sealed package, as in the instant case, but salt mullets, and it can be assumed that the *Chief Justice* meant to imply that in a proper case the doctrine of implied warranty would apply.

The weight of authorities, I think, holds that an implied warranty will lie in cases such as the case at bar. In 26 C. J., 785, it is said: "It is generally agreed by the authorities that a manufacturer, packer, or bottler of foods or beverages is directly liable to a consumer for an in-

jury caused by the unwholesomeness or the unfitness of such articles, although purchased from a dealer or middleman and not from such manufacturer, bottler, or packer." The modern doctrine is stated in 11 R. C. L., 1122, as follows: "In the case of food sold in cans, bottles, and sealed packages, some of the earlier decisions denied the right of the consumer to recover from the manufacturer, it appearing that the goods were purchased through the medium of a retail dealer. . . . A great majority of the more recent cases, however, hold that the ultimate consumer of products sold in cans or sealed packages may bring his action direct against the packer or manufacturer." 17 A. L. R., 688; 39 A. L. R., 995; 63 A. L. R., 343; 88 A. L. R., 531; *Dothan-Chero-Cola Bottling Co. v. Weeks,* 80 So., 734 (Ala.); *Davis v. Van Camp Packing Co.,* 176 N. W., 382 (Iowa); *Parkes v. C. C. Yost Pie Co.,* 144 Pac., 202 (Kan.); *Meshbessher v. Channellene Oil Co.,* 119 N. W., 428 (Minn.); *Chenault v. Houston Coca-Cola Bottling Co.,* 118 So., 177 (Miss.); *Tomlinson v. Armour,* 70 Atl., 314 (N. J.); *Nock v. Coca-Cola Bottling Works of Pittsburgh,* 156 Atl., 537 (Pa.); *Mazetti v. Armour,* 135 Pac., 633 (Wash.).

There are many cases to the effect that negligence must be alleged and proven, and elaborate opinions have been written, pro and con, and it is sometimes not easy to determine whether the Court holds the manufacturer liable without negligence or that the defect proven to exist in the manufactured products is without more sufficient evidence of negligence. 1 Williston on Sales (2d Ed.), footnote, p. 490. While our own decisions in North Carolina are not definite, I think the better view is stated in *Nock v. Coca-Cola Bottling Works of Pittsburgh, supra,* as follows: "We think the sounder reasoning is in support of the theory that a sale of food or beverage impliedly warrants that it shall be free of a foreign matter which may be injurious to the well-being of the consumer. Nor do we see any just reason, from a public policy standpoint, as the health or human life may be involved, why a sale of food or beverage intended for human consumption should not carry with it an implied warranty that it is suitable and wholesome."

The flour manufacturer, in the instant case, when it delivered the sack of flour in question, impliedly represented to the public that it was free from injurious substances and fit for human food.

As pointed out in *Ward Baking Co. v. Trizzino,* 161 N. E., 557 (Ohio), there is no doubt that an implied warranty arises between the groceryman who makes the purchase and the manufacturer. The groceryman did not make the purchase for himself, but for his customers, who are the ultimate consumers. The groceryman is merely the distributing agent, he has no opportunity to make an inspection of a sealed package and the manufacturer is fully aware of that fact. The

contract between the manufacturer and the retailer is one for the benefit of a third party, the ultimate consumer. If there is any implied warranty between the manufacturer and the retailer, and there is no conflict of decisions on that point, then it is for the benefit of the third party, the ultimate consumer. Therefore, I fully agree with the holding in *Ward Baking Co. v. Trizzino, supra,* that an implied warranty for the benefit of an ultimate consumer of a food product can be relied upon by such a consumer against its maker, who supplied it to a store for resale to the public, upon the ground that "there is imposed the absolute liability of a warrantor on the manufacturer of articles of food, in favor of the ultimate purchaser, even though there are no direct contractual relationships between such ultimate purchaser and the manufacturer."

It is of the greatest importance to the health of the general public that when they purchase food or drink it should be pure, wholesome, and fit for use. It is a hard measure and almost impossible to prove negligence and by the weight of authorities, this rule under modern conditions is fastly growing obsolete. The true rule, in more recent decisions, is that there is an implied warranty from the manufacturer to the consumer, the general public, where there is no opportunity to inspect, that the food or drink is pure, wholesome, and fit for consumption. I think there is no error in the judgment of the court below.