### COCA-COLA BOTTLING CO. OF HENDERSON, Inc., v. MUNN.

#### No. 4343.

Circuit Court of Appeals, Fourth Circuit.

Oct. 4, 1938.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

A. J. Fletcher, of Raleigh, N. C., for appellant.

J. Melville Broughton, of Raleigh, N. C., and T. Lanier, of Oxford, N. C. (R. W. Winston, of Oxford, N. C., on the brief), for appellee.

SOPER, Circuit Judge.

The Bottling Company appeals from a judgment for $3,641, obtained by Garland Munn, plaintiff in the District Court, in a cause of action for injuries sustained in drinking the contents of a Coca-Cola bottle containing a deleterious substance. The action was based on the charge that the Bottling Company had negligently allowed sodium hydroxide and sodium carbonate to be bottled with the beverage, with the result that the plaintiff was burned when he opened the bottle and drank therefrom.

The plaintiff purchased a bottle of Coca-Cola from a merchant who kept a grocery store and filling station, helping himself from an ice box as he was invited to do by a sign thereon. The bottle was sealed tight with a crown seal and was opened in the usual manner. Upon drinking from it the plaintiff felt a burning sensation in his mouth and throat. He called the merchant, who tasted the contents and was also burned. The top was replaced on the bottle by hand. The bottle and the remaining contents were taken to a physician and later analyzed in the office of the state chemist and found to contain sodium hydroxide and sodium carbonate in sufficient quantities to sear and burn the lining of the mouth and tongue when taken internally. The plaintiff was confined to the hospital for seven days on account of his burns and was later treated by a physician for a considerable period. He had trouble with his gums and teeth, his nerves were affected, and he had difficulty in retaining food and in working on his farm during the balance of the year.

■ The questions to be considered first relate to the sufficiency of the evidence offered by the plaintiff. It is contended that the District Court erred in failing to non-suit the plaintiff under the North Carolina practice. The defendant moved for judgment as of non-suit at the conclusion of the plaintiff's evidence and renewed the motion at the conclusion of all of the evidence. At the latter time it also moved for a directed verdict in its favor; but all of the motions were denied. The defendant contends that the burden was upon the plaintiff to exclude the reasonable possibility of contamination from other sources than the defendant's plant, basing the argument on expressions in the opinion of Bourcheix v. Willow Brook Dairy, 268 N. Y. 1, 196 N.E. 617, 98 A.L.R. 1492. The court in that case, however, probably meant to say no more than that the plaintiff in a case of negligence must fail, if it is impossible to say from the evidence whether the injury complained of was brought about by negligence of the defendant or by some other cause. The plaintiff in an action for negligence in North Carolina is not required to prove his case beyond a reasonable doubt or to exclude the possibility of any other theory. Fitzgerald v. Railroad Co., 141 N.C. 530, 535, 54 S.E. 391, 6 L.R.A., N.S., 337. It is sufficient if he proves his case by a preponderance of evidence.

■ In the pending case the plaintiff offered evidence which, if believed, justified the conclusion that the alkali was not put in the bottle after it left the factory, for he testified that he took the bottle tightly sealed from the regular source of supply in the store, and opened it with a bottle opener. It is true that there was a lack of effervescence, but this does not destroy the effect of the evidence tending to show that the bottle had not been previously opened by some one other than the plaintiff. In North Carolina, as in New York,

the essential basis of liability in a case like the present is negligence and not an implied warranty; Enloe v. Bottling Co., 208 N.C. 305, 180 S.E. 582; but the evidence we have discussed was not open to the defect now charged.

The motions for non-suit and for directed verdict were also based on the ground that the plaintiff's evidence was insufficient to support a verdict in his favor without resort to the doctrine of res ipsa loquitur which is not available to the plaintiff in a case like this under the North Carolina decisions. The question was discussed in Dail v. Taylor, 151 N.C. 284, 66 S.E. 135, 28 L.R.A.,N.S., 949, in which the plaintiff sought to recover for damages suffered from the unexpected explosion of a Coca-Cola bottle; and the sufficiency of the occurrence and resulting injury to show negligence on the part of the defendant was considered. The court held that the doctrine of res ipsa loquitur only applies where, upon proof of an occurrence and of injury, the existence of negligence is the more reasonable probability and not where it rests only in conjecture; and that it would be entirely unsafe to hold that the explosion of a single bottle of Coca-Cola rises of itself to the dignity of legal evidence sufficient to carry a case to the jury. Nevertheless a judgment for the plaintiff was sustained in that case, because, in addition to the plaintiff's experience, instances of similar explosions of bottles filled by the defendant were proved, so that in the opinion of the court the evidence as a whole tended to show a want of proper care. Similar rulings were made in subsequent cases in which foreign and deleterious substances were found in bottles of Coca-Cola or other beverages; and it is now established law in North Carolina in cases like the present, that while a single incident is insufficient to prove negligence, yet if it is coupled with evidence showing that foreign or deleterious substances were found in other bottles filled under substantially similar conditions and sold by the defendant at or about the time of the plaintiff's injury, a case of negligence on the part of the defendant is made out. Cashwell v. Bottling Works, 174 N.C. 324, 93 S.E. 901; Lamb v. Boyles, 192 N.C. 542, 135 S.E. 464, 49 A.L.R. 589; Perry v. Bottling Co., 196 N.C. 175, 145 S.E. 14; Blackwell v. Bottling Co., 208 N.C. 751, 182 S.E. 469; Id., 211 N.C. 729, 191 S.E. 887; Enloe v. Bottling Co., 208 N.C. 305, 180 S.E. 582; Collins v. Bottling Co., 209 N.C. 821, 184 S.E. 834; McCarn v. Gastonia Bottling Co., 213 N.C. 543, 196 S.E. 837; Smith v. Bottling Co., 213 N.C. 544, 196 S.E. 822. In other jurisdictions the doctrine of res ipsa loquitur has been applied, and it has been held that a single instance of injury from a foreign substance in a sealed bottle is sufficient prima facie proof to take the case to the jury. See Fisher v. Washington C. C. Bottling Works, 66 App.D.C. 7, 84 F.2d 261, 105 A.L.R. 1034, and Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866.

The doctrine of res ipsa loquitur is a part of the law of evidence and deals with the sufficiency of proof to raise an inference of negligence on the part of the defendant and thus make out a prima facie case of the defendant's liability. The application of the doctrine in a given case may therefore materially affect the substantive rights of the parties; and it may be thought to involve a question which, like questions of substantive law under the recent decisions of the Supreme Court in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, should be solved in a federal district court in a case of diverse citizenship in accordance with the decisions of the highest court of the state in which the case is tried. The same result would follow if the view is taken that the doctrine of res ipsa loquitur, as a part of the law of evidence, relates to procedural as distinct from substantive rights; for it is the well established rule in this and other circuits that the federal courts in the decision of questions of evidence are bound to follow not only the statutes but also the decisions of the highest court of the state where the trial occurs. See Franklin Sugar Ref. Co. v. Luray Supply Co., 4 Cir., 6 F.2d 218, 220, in which this court held that such a course of action is required as well by the statutes of the United States as by the decisions of the courts. See, also, Standard Oil Co. v. Cates, 4 Cir., 28 F.2d 718; Virginia Beach Bus Line v. Campbell, 4 Cir., 73 F.2d 97; Keur v. Weiss, 4 Cir., 37 F.2d 711. There are decisions to the contrary, notably Louisville & Nashville R. Co. v. McClish, 6 Cir., 115 F. 268; West Tennessee Grain Co. v. J. C. Schaffer & Co., 6 Cir., 299 F. 197; Chicago & N. W. R. Co. v. Kendall, 8 Cir., 167 F. 62, 16 Ann.Cas. 560; Massa-

chusetts Bonding Co. v. Norwich Pharmacal Co., 2 Cir., 18 F.2d 934; but these decisions seem to have been influenced by the previously accepted rule that decisions of the state courts on questions of general law are not binding on the federal courts, a rule no longer tenable in view of the overruling of Swift v. Tyson, 16 Pet. 1, 18, 10 L.Ed. 865, by Erie Railroad Co. v. Tompkins and Ruhlin v. New York Life Ins. Co., supra. The same comment may be made upon the decisions in Patton v. Illinois Central R. Co., C.C., 179 F. 530, 532, and Montbriand v. Chicago, St. Paul, M. & O. R. Co., C.C., 191 F. 988, 990, in which the court refused to follow the application of the doctrine of res ipsa loquitur as laid down by the state courts on the ground that it concerned a question of general jurisprudence.[1]

In the pending case, however, the evidence of the plaintiff was not confined to the single circumstance of his own injury but also included other accidents with bottles issued by the same defendant, so that assuming for the moment that the other instances were not too dissimilar or too remote in point of time to be admissible in evidence, it appears that the plaintiff complied with the North Carolina rule and that the motions for non-suit and for a directed verdict were properly overruled.

We come then to consider objections to the judge's charge and to rulings on questions of evidence. The charge to the jury was fairly made, and their attention was drawn to the evidence of other instances and to the plaintiff's contention that the operations of the defendant had become so careless that not only the plaintiff himself but other people in similar circumstances suffered from the defendant's neglect. But the jury were not cautioned that they could not base a verdict adverse to the defendant on the plaintiff's testimony alone. On the contrary they were told in so many words that "the presence of the deleterious substance complained of, sodium hydroxide or sodium carbonate, in the bottle when the bottle of coca cola was opened and part of its contents drunk by the plaintiff, was prima facie evidence of negligence but not conclusive". This portion of the charge was specifically objected to by the defendant and we cannot say that it was not prejudicial to the defendant since it suggested to the jury, contrary to the law of North Carolina, that the plaintiff's accident alone constituted evidence of actionable negligence. It would have been more correct to have told the jury that the evidence with regard to the plaintiff's injury was not sufficient of itself to justify an inference of negligence on the part of the defendant, but that it should be considered in connection with the other evidence relating to similar accidents; and if from a consideration of all of the evidence the jury should find that the defendant had been negligent in the operation of its plant at the time that the bottle sold to the plaintiff was filled, and that by reason of such negligence the deleterious alkalies were left therein, then they might find a verdict in favor of the plaintiff.

Since the case must be remanded for a new trial, it is desirable to consider certain questions of evidence which arose in the District Court. The defendant challenged the admissibility of evidence of other accidents caused by deleterious substances found in bottles filled and sold by it. A. R. Petty kept a store in the same town in which the plaintiff purchased the Coca-Cola in the pending case. Petty testified that on July 18, 1936, the day after the plaintiff's injury, he took from the ice box in his place a bottle of Coca-Cola which he had purchased from the defendant, drank a portion of it and was burned in the mouth, gums and teeth, so that a part of his teeth had to be pulled. He consulted a doctor the same night.

Egbert Smith testified that on August 6, 1936 he bought a bottle of defendant's Coca-Cola in a country store in Franklin County, North Carolina, which adjoins Granville County in which the plaintiff made his purchase. Smith drank Coca-Cola therefrom and felt something scratch his throat; that his intestines were cut up pretty badly by glass which came from the bottle, and that he went to the doctor and was under treatment for about two weeks.

[1] The pending case was tried before September 16, 1938 when the rules of civil procedure for the District Courts of the United States, adopted by the Supreme Court pursuant to the Act of June 19, 1934, Ch. 651, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c, became effective. Rule 43 thereof, 28 U.S.C.A. following section 723c, contains certain provisions relating to the form and admissibility of evidence. We do not now determine what effect this rule will have hereafter in the decision of such questions as are involved in the pending case.

The admissibility of such testimony was considered by the North Carolina Supreme Court in the cases cited above, notably in Enloe v. Bottling Co., 208 N.C. 305, 180 S.E. 582; Collins v. Bottling Co., 209 N.C. 821, 184 S.E. 834, and Blackwell v. Bottling Co., 211 N.C. 729, 191 S.E. 887. The proof in the Enloe Case showed that the plaintiff purchased a bottle of Coca-Cola on April 8, 1933 which contained a mouse and became ill from drinking the contents. It was there held (page 308, 180 S.E. page 584):

"9. That as tending to establish the principal fact in issue, to wit, the alleged actionable negligence of the defendant, it is competent for the plaintiff to show that like products manufactured under substantially similar conditions and sold by the defendant 'at about the same time' contained foreign or deleterious substances. Perry v. Bottling Co., [196 N.C. 175, 145 S.E. 14] supra; Dail v. Taylor, [151 N.C. 284, 66 S.E. 135, 28 L.R.A.,N.S., 949] supra; Ward v. Seafood Co., [171 N.C. 33, 87 S.E. 958] supra; Davis v. Packing Co., 189 Iowa 775, 176 N.W. 382, 17 A.L.R. 649.

"10. That such similar instances are allowed to be shown as evidence of a probable like occurrence at the time of plaintiff's injury, when accompanied by proof of substantially similar circumstances and reasonable proximity in time. Perry v. Bottling Co., supra; Broadway v. Grimes [204 N.C. 623, 169 S.E. 194] supra; Grant v. Bottling Co. [176 N.C. 256, 97 S.E. 27, 4 A.L.R. 1090] supra; Etheridge v. R. R., 206 N.C. 657, 175 S.E. 124; 22 C.J. 750, et seq."

Tested by these standards, testimony was held inadmissible which showed that another person was burned by drinking in February, 1931, a bottle of Coca-Cola manufactured by the same defendant, because the transaction was too remote in point of time (page 309, 180 S.E. page 584), "there being nothing to show that it was one of a series of similar occurrences preceding or following the date of plaintiff's injury, or that the circumstances were substantially the same as in the instant case". Likewise testimony was held inadmissible which showed that two other persons on June 26, 1934 and August 27, 1934 respectively bought bottles of Coca-Cola bottled by the same defendant which contained pieces of glass, since the testimony related to substances suggestive of a dissimilar rather than a similar source of deleteriousness from that of which the plaintiff complained. The court also pointed out that the testimony of another person that he had bought a bottle of Coca-Cola on April 7, 1934 which contained a dead fly was not properly safeguarded, and suggested that all of the instances above mentioned and another relating to a purchase on August 29, 1932 were merely isolated instances widely separated and too remote in point of time. The court approved the limitation on the admissibility of this kind of evidence considered in Etheridge v. Railroad, 206 N.C. 657, 175 S.E. 124.

In the subsequent case of Collins v. Bottling Co., 209 N.C. 821, 184 S.E. 834, the admissibility of testimony of other Coca-Cola bottles containing foreign substances was considered, and the court granted a new trial because of an absence of any evidence as to the time when the bottles containing foreign substances were sold by the defendant to the various retail dealers.

It is contended in the light of these decisions that neither the Petty nor the Smith incident in the pending case was admissible in evidence. But it is obvious that the injury to Petty was sufficiently close in point of time and in similarity of the deleterious substance to be admissible under the rule in the Enloe Case. It is true that there is no specific evidence as to the time of manufacture of the bottles purchased by the plaintiff in the pending case and by Petty, but in view of the common practice of storekeepers of purchasing their supplies as they need them, it is a fair inference that both bottles were manufactured at or about the same time. It may be desirable upon the retrial of the case to introduce evidence as to the time when the actual manufacture took place. The comment of the court in the Collins Case as to the absence of proof of the time when the bottles were sold by the defendant to the dealer suggests that such testimony is desirable.

The admissibility of the Smith incident is not entirely free from doubt. There was some difference in point of time—the plaintiff's injury was sustained on July 17 and Smith's on August 6. Moreover, there was the same dissimilarity in the substances contained as was said to be objectionable in the Enloe Case. But, on the other hand, the circumstances of the Smith accident did not differ so greatly either in the nature of

the harmful substance or in point of time from the plaintiff's as to be irrelevant if the rulings in other North Carolina cases are considered. The injury to Smith which occurred on August 6, 1936 was itself the subject of litigation in Smith v. Bottling Co., 213 N.C. 544, 196 S.E. 822, and it was held not to be error to receive evidence of a like injury that occurred on October 9, 1936 and also evidence of the finding in other bottles of the same bottler during the summer of 1936 of such foreign substances as heavy black oil, matches and chewing gum.[2] Garland Munn, the plaintiff in the pending case, testified in the Smith Case and said that when he drank Coca-Cola of the same bottler on July 17, 1936 it burned his tongue; but this testimony was stricken out by the trial court as incompetent. The evidence, however, did not show the presence of alkali in the beverage consumed by Munn and hence this ruling complied with the decision in Lamb v. Boyles, 192 N.C. 542, 135 S.E. 464, 49 A.L.R. 589. Considering all of these decisions, we cannot say that there was error in receiving the testimony of either Smith or Petty.[3]

 The contention is also made that it was prejudicial error to permit the witnesses, Smith and Petty, to describe in some detail the nature of the injuries which they suffered from drinking the Coca-Cola. Undoubtedly the court should protect the defendant in such a situation from the harmful effects likely to be caused by the evidence of matters extraneous to that at issue in the pending case; but the procedure must be left to the reasonable discretion of the court. On the one hand, so much evidence is proper as will show the injurious character of the foreign substances found in bottles by persons other than the plaintiff as well as the similarity of these instances to that in the pending case. But, on the other hand, care should be taken lest the defendant be prejudiced by emphasis upon injuries which should not be considered by the jury in arriving at the amount of a verdict favorable to the plaintiff. This may be done by restricting the scope of the evidence and, if necessary, by express warning to the jury.

 Another question of evidence arose in connection with the admission in evidence of a letter from the state chemist to an attorney for the plaintiff which contained a report of the chemical analysis of the contents of the bottle. The letter contained the statement that the total alkali, exceeding 10 per cent of the weight of the substance analyzed, was somewhat in excess of twice the strength of the caustic generally used in bottling plants, and also the statement that the sugar content proved to be .7 gram per hundred cubic centimeters, as compared with a sugar content of 11.5 grams per hundred cubic centimeters in normal Coca-Cola. The letter also contained the following sentence: "I would construe these two phenomena as indicating that the caustic alkali came into the bottle in some manner after it had been filled with the Coca-Cola". The plaintiff objected to the admissibility of the letter but the court admitted it with the exception of the quoted sentence and the defendant excepted to the exclusion of this sentence from the attention of the jury. We find no error in this ruling. If the sentence had been admitted, the witness would have been permitted to state his conclusion as to the ultimate fact in issue and to this extent to invade the province of the jury. Under the law of North Carolina, such a procedure may not be followed. Smith v. Commissioners, 176 N.C. 466, 470, 97 S.E. 378; Broom v. Bottling Co., 200 N.C. 55, 156 S.E. 152; Deppe v. A. C. L. Ry., 154 N.C. 523, 70 S.E. 622; Mullinax v. Hord, 174 N.C. 607, 94 S.E. 426.

The defendant was given full opportunity to cross examine the expert who signed the report, and in so doing elicited facts tending to show the improbability that the caustic soda was negligently left in the bottles in the manufacturing plant. The expert testified that the alkali found in the bottles is extremely soluble in water and that if, as the evidence tended to show, the bottles were placed in a vat containing caustic soda, it would immediately dissolve in water; that if the machinery carried the bottles open and in an inverted position for any length of time, the solution of alkali would immediately drain from them;

---

[2] See, also, Broom v. Bottling Co., 200 N.C. 55, 156 S.E. 152; Dry v. Bottling Co., 204 N.C. 222, 167 S.E. 801; Blackwell v. Bottling Co., 211 N.C. 729, 182 S.E. 469.

[3] The opinion in Smith v. Bottling Company, supra, does not recite the evidence and the above statement of the case is taken from the record in the Supreme Court of North Carolina to which we have had access.

that if subsequently clear water was shot up into the bottles with revolving brushes and the bottles were carried forward in an inverted position for several feet and for two or three minutes, any alkali taken into the bottle in the soaker would have been washed out. It thus appears that the defendant actually had the benefit of the opinion of the expert upon the relevant facts insofar as it was helpful to the defendant and proper to be expressed in the course of the trial.

**■** In this connection we should consider a question of admissibility of evidence which was offered by the defendant for the apparent purpose of showing that the injurious substance found in the bottle might have been inserted after it left the bottling works. The state chemist had given his analysis of the contents of the bottle, showing that the amount of alkali in the solution, constituting approximately 10 per cent by weight of the whole, was more than three times that required by state regulation for the solution for cleansing bottles in bottling establishments. He was then asked whether or not if the cap of a bottle had been removed and raw lye had been put into it, the same analysis would not have been found. An objection to this testimony was sustained.

We find no error in this ruling in view of the fact that there was no evidence tending to show that the bottle had been tampered with or opened before it was purchased by the plaintiff. Assuming that the question asked would have been answered in the affirmative, the only result would have been a showing that the kind of alkali in the bottle was readily obtainable in the retailer's store and was of such strength as to render the contents unfit for human consumption. Such testimony was in effect given by the chemist who stated that a ten per cent solution of alkali is at the point at which it is most corrosive. The testimony also showed, as we have pointed out, that the solution in the bottle contained an alkali more than three times as strong as was required in the cleansing solution prescribed by departmental regulations. The jury, therefore, had before it the evidence of a witness for the plaintiff that the contents of the bottle were most unusual, and were at liberty to draw the inference, if they should find it reasonable, that the deleterious substance was not placed in the bottle in the defendant's plant.

**■** Another question of evidence relates to the admissibility of a statement made by the plaintiff several months after the accident when he had an opportunity to inspect the defendant's plant. On this occasion the plaintiff accompanied the superintendent of the plant, and when the latter was on the stand he was questioned as to whether he had asked the plaintiff what his opinion was as to the efficiency of the plant. This question was objected to and sustained, but an offer of proof was made that the plaintiff said that he did not think a bottle could have any alkali in it after going through the plant and that such a thing would be impossible. The defendant insists that this evidence should have been received as an admission of a party to the cause; but the plaintiff had no knowledge of the conditions prevailing in the plant at the time that the beverage which injured him was bottled, and the proffered proof would have amounted only to the expression of an opinion on his part. Even an admission, under the law of North Carolina, must be the acknowledgement of a fact and not a mere opinion. Royal Insurance Co. v. R. R., 195 N.C. 693, 143 S. E. 516; compare Wigmore on Evidence, Vol. 2, § 1053; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F. 325, 336.

**■** Certain evidence bearing on the damages suffered by the plaintiff as a result of his injury was received over objection and must also be considered. The plaintiff testified that in 1936 he sustained a financial loss of about one-half of his income by reason of physical disability caused by his injury. He was in the midst of the tobacco season when he was injured. He could not work the tobacco crop himself and could get no help, as every one else was busy, and the crop stayed in the field and was ruined on the stalk. His crop of tobacco had generally been bringing from $1,500 to $1,800 a year. His annual net earnings for a period of two or three years previous to his injury were about $1,200 or $1,300, but in 1936 they were $600.

**■** This evidence went to the jury over the objection of the defendant without comment or instruction by the judge other than a general reference to loss of earning capacity by the plaintiff as an element of damage in case the jury should find a verdict in his favor. In our opinion, this treatment of the question of damages was prejudicial to the defendant. The partial

loss of the tobacco crop was not the necessary or natural consequence of the plaintiff's injury. Under ordinary circumstances he might have hired another person to furnish the labor which he himself was unable to perform and the expense thereof would have been a proper element of damage. See Sledge v. Reid, 73 N.C. 440; Bullard v. Ross, 205 N.C. 495, 171 S.E. 789. The jury might well have been instructed to confine their estimate of this element of the, damages to the value of the work which the plaintiff would otherwise have done, unless they should also find that on account of prevailing conditions no other labor could be secured. Such a situation would have given rise to a claim for special damages which must ordinarily be specially pleaded in order that the defendant may not be taken by surprise. Boston & Albany R. R. Co. v. O'Reilly, 158 U.S. 334, 15 S.Ct. 830, 39 L.Ed. 1006; Manufacturing Co. v. Gray, 111 N.C. 87, 15 S.E. 939; Id., 111 N.C. 92, 93, 15 S.E. 940; American Pure Food Co. v. G. W. Elliott & Co., 151 N.C. 393, 397, 66 S.E. 451, 31 L.R.A.,N.S., 910; Brewington v. Loughran, 183 N.C. 558, 565, 112 S.E. 257, 28 A.L.R. 1543; 17 C.J. 1002, Damages, Sec. 306; Conrad v. Shuford, 174 N.C. 719, 94 S.E. 424; Sutherland on Damages, 4th Ed., Sec. 419 et seq.

The complaint in the pending case contained no mention of special damages; but no objection seems to have been made on this account and the omission was therefore immaterial. Nevertheless the evidence as introduced was objectionable. The damages flowing from the partial loss of the crop could not be measured by the mere comparison of the crop yield for 1936 with that·of preceding years. The right to recover damages for diminution in the yield of crops caused by breach of contract or by tortious act has been recognized in North Carolina but the difficulty of definitely ascertaining the amount of the loss has been pointed out. In Perry v. Kime, 169 N.C. 540, 541, 86 S.E. 337, the court said:

"We have been confronted, on one hand, with the legal principle that, when there is a breach of contract or a tort, and damage ensues as the direct and natural result, the party injured is entitled to just compensation, and that the uncertainty as to amount is not more doubtful than in other cases in which recoveries are sustained here and elsewhere, such as profits in business under certain conditions and physical pain and mental anguish, and, on the other, with the knowledge that so many and such diverse circumstances affect the yield of crops that it is almost impossible to find out the cause or to estimate the result.

"The character of the soil and its condition, the kind of seed used, when planted and how; the preparation of the soil for planting, the quality of fertilizer, the quantity and the time and manner of its application, the cultivation of the crop, the harvesting of the crop, the seasons, and other circumstances enter into the estimate of what ought to be made, and, when all are favorable, it is rare that the owner of land gathers in the fall what he expected in the spring.

"A delay of a week in planting may make or destroy the crop, and sometimes, under apparently similar conditions, there is a good crop on one side of the road and a poor yield on the other side.

"These considerations have led to the conclusion that a recovery of damages on account of the diminished yield of the crop will not be allowed upon a mere comparison of the crop yield of one year with that of another (Tomlinson & Co. v. Morgan, 166 N.C. 557, 560, 82 S.E. 953), and that is the case presented by the plaintiff."

See, also, Roberts v. Cole, 82 N.C. 292; Sutherland on Damages, 4th Ed., Section 61.

The testimony of the plaintiff that the net return from his crop during the year of his injury was not more than one-half of that received in each of the two or three preceding years was therefore insufficient to prove the amount of his loss and should be excluded if offered in a retrial of the case, unless it is accompanied by evidence tending to show the conditions affecting the harvesting and sale of the crop in 1936 and also in the years with which comparison may be sought to be made, so that the recoverable damages may be limited to those which actually flowed from the defendant's neglect.

Reversed and remanded.